Calvin SELLARS, Petitioner,

v.

W. J. ESTELLE, Jr., et al., Respondents.

Civ. A. No. H–77–1481.

United States District Court,
S. D. Texas,
Houston Division.

May 17, 1978.

Larry Watts, Albert Low, Houston, Tex., for petitioner.

Joe B. Dibrell, Austin, Tex., David Jones, Houston, Tex., Asst. Attys. Gen. of the State of Texas, for the State of Texas.

Bert Graham, William W. Burge, Harris County Asst. Dist. Attys., Houston, Tex., for Harris County, Texas.

## SUPPLEMENTAL MEMORANDUM OPINION

COWAN, District Judge.

On the 3rd and 4th days of May, 1978, this Court heard additional evidence offered by Respondents in connection with Petitioner's Application for Writ of Habeas Corpus. Respondents introduced the testimony of J. E. Hodges, Judge Sam Robertson, Donald I. Baker, and considerable documentary evidence including the transcript of the habeas corpus proceeding previously held before Judge Ross N. Sterling, the transcript of the trial of the *State of Texas v. Calvin Sellars,* and the transcript of a previous habeas corpus proceeding before Judge Allen B. Hannay. The Court having considered such additional evidence, makes the following controlling finding of fact:

Mr. Robert B. Schallert's description of the events after the arrest of Calvin Sellars is essentially accurate; the description given by Mr. J. E. Hodges is inaccurate.

The Court's reasons for accepting the testimony of Robert Schallert and rejecting that of J. E. Hodges are:

1. There is a marked difference in the demeanor of the witnesses. Former officer Schallert is, this Court finds, a more credible, straight-forward and consistent witness than J. E. Hodges.

2. Robert B. Schallert's testimony in this case is in the nature of an admission against interest, a declaration against interest, or even a statement against penal interest. Of course, the statute of limitations has now run and Officer Schallert cannot be prosecuted for perjury as a result of his testimony at the original Calvin Sellars' trial; nevertheless, evidence in the nature of an admission, a declaration against interest or a statement against penal interests has always been accorded particular weight, and regarded as being unusually reliable. See, for example, *United States of America v. Thomas,* 571 F.2d 285 et seq. (5th Cir. 1978).

Robert Schallert is a respectable individual engaged in the real estate business in the City of Houston. It is apparent from Judge Sam Robertson's testimony that Mr. Schallert's associates, friends, and potential customers are persons strongly oriented in favor of law enforcement agencies. Robert Schallert's testimony on December 7, 1977 in this case required considerable courage because it could, in many circles, subject him to abuse, disrespect and considerable embarrassment.

Despite the lapse of a considerable period of time between Mr. Schallert's original testimony and the ultimate closing of the evidence in this matter, the State of Texas has not been able to prove any facts that impeach Mr. Schallert or tend in any way to impeach him.

It is also apparent from a review of the transcript in C.A. 76–H–1897, the proceeding before the Honorable Ross N. Sterling, that former Officer Schallert's original candor surprised Sellars. At that proceeding, Schallert, in a non-responsive answer, revealed to Sellars for the first time that he, Schallert, was now prepared to testify that when Sellars was first arrested, he was in fact placed face down in the back seat of the police vehicle. This series of events refutes, in this Court's mind, any suggestion of collusion between Sellars or anyone interested in his welfare and former Officer Schallert.

3. In connection with the Hodges testimony, there are, the Court finds, serious inconsistencies between Hodges' sworn testimony and the affidavit which he recently executed at the request of respondents and which was filed in support of respondents' motion to reopen the testimony. Two of these inconsistencies are:

A. Before this Court, Hodges testified with great forecefulness that he did not know the substance of former Officer Schallert's testimony. In his affidavit, however, Hodges had certified that he had read Schallert's testimony. Other testimony indicates that Hodges had in his possession newspaper clippings describing Schallert's testimony.

B. Hodges, before this Court, testified that at the time of the arrest of Sellars, Hodges assumed that Schallert was going to drive Sellars' vehicle back to the police station. Hodges' affidavit, on the contrary, certifies that from the inception of the arrest, Hodges was aware of Sellars' alleged desire to drive around the northern part of the city and discuss the Scheps' robbery.

4. Robert Schallert's testimony on December 7, 1977, places this entire series of events in an entirely new light. In the illumination of this light, there is no satisfactory explanation, from respondents' point of view, of the manner in which Sellars was arrested. The only conceivable reason why Sellars could have been arrested at an isolated spot, and his car left behind a tavern (when he could have been arrested at his place of work) was so that Sellars during his interrogation would know that he was completely in Schallert's and Hodges' power. It is now obvious Hodges and Schallert under the circumstances could have easily persuaded Sellars that if his body were found in a ditch outside Houston several days later, no one could prove how he got there. It may well be,

and it probably is true that Hodges and Schallert had no intention of physically harming or killing Sellars; however, it is obvious that the officers wished Sellars to believe that he was completely within their power. Former Officer Hodges stumbled, fell and was never able to rehabilitate himself in his efforts to explain why the arrest was handled in the manner in which it was handled.

5. Mr. Hodges' description of Sellars' alleged conduct is not credible. It is not realistic to believe that an intelligent, determined, jail-wise person would voluntarily step into a vehicle with two members of the Houston Police Department and almost immediately, without persuasion or inducement, begin to describe his own full participation in a heinous capital offense. Hodges' testimony now, and Schallert's testimony at the time of the trial, is simply not consistent with human nature and this perception is now easy in the illumination of the light of Robert Schallert's testimony of December 7, 1977.

6. There are material inconsistencies between the testimony of Mr. Hodges and the testimony of Officer C. M. Leonard. While these inconsistencies, standing alone, might be explained on the basis of a simple lapse of time, if taken in consideration with all of the circumstances discussed herein and in the original opinion, these inconsistencies appear to the Court to be material, relevant and highly damaging to the credibility of Mr. Hodges.

Nothing in this memorandum opinion or the Court's original memorandum opinion should be construed as casting any discredit whatsoever upon Judge Sam Robertson or Mr. Gus Zgourides, the prosecutors who handled Calvin Sellars' initial trial and investigation. There is no hint or indication that these representatives of the District Attorney's office had any knowledge or any reason to have knowledge of the perjury of Schallert and Hodges.

Judge Robertson testified at the time of trial, and repeated his testimony before this Court, that Calvin Sellars, while negotiating for immunity and conferring in connection with possible testimony against Sam Hoover, failed to complain of mistreatment or coercion. Judge Robertson's testimony is uncontroverted and without dispute true. Sellars explains that he did not complain of mistreatment to Judge Robertson because, at the time of his conferences with Robertson, he was still in the custody of the Houston Police Department, and was fearful of the treatment which he would receive if he complained of mistreatment. In addition, it is apparent to the Court from Judge Robertson's testimony that Sellars was attempting to negotiate for immunity. If Sellars had "rocked the boat" by complaining of mistreatment or apprising the District Attorney's office of coercion, his bargaining power as a potential witness against Hoover would disappear. The Court believes that Sellars was intelligent enough to perceive this reality.

This Court in its original opinion gave the State of Texas an opportunity to try Sellars again. In addition, the State has been given an opportunity to produce evidence that Sellars is a flight risk or a current danger to the community. Sellars has been in custody of respondent for 14 years and respondent is in a position to offer testimony that Sellars is either a flight risk or a danger to the community at the present time, and respondent has offered no testimony of this nature and apparently has no intention of affording Sellars a prompt retrial. This Court must conclude that respondent has no evidence that Sellars is a flight risk or that he is a danger to the community, and therefore the Court has determined to and has released Sellars upon his own recognizance, pending appeal of this Court's order.

ENTERED and EXECUTED at Houston, Texas, this the 17th day of May, 1978.