**UNITED STATES of America ex rel. Clay THOMAS**

v.

**STATE OF NEW JERSEY et al., Appellants.**

**No. 72–1361.**

United States Court of Appeals, Third Circuit.

Argued Dec. 4, 1972.

Decided Jan. 23, 1973.

George F. Kugler, Jr., Atty. Gen., Alfred J. Luciani, Deputy Atty. Gen., East Orange, N. J., for appellants.

Thomas E. Bracken, Office of Public Defender, Morristown, N. J., Stanley C. Van Ness, Office of Public Defender, Trenton, N. J., for appellee.

Before VAN DUSEN, GIBBONS and HUNTER, Circuit Judges.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal by the State of New Jersey from an order granting a petition for a writ of habeas corpus. The basic order appealed from provides:

"ORDERED that a writ of habeas corpus shall issue.

Further ORDERED that pending appeal, if any is taken by the State, or pending retrial, the Passaic County Court entertain an application by peti-

tioner for bail to be fixed by the State Court in such amount and such form as may be deemed reasonable.

Further ORDERED that in the event an appeal is not taken by the State and the indictment is not moved for retrial within 60 days of the date hereof, petitioner shall be released from all further custody pursuant to the indictment."

Upon the entry of this order, Thomas, the petitioner, applied to the Passaic County Court to be released on bail. That court declined to entertain such an application. Thomas returned to the district court, which then amended the basic order to provide that he should be released upon posting his own personal unsecured bond in the amount of $25,000 with the Passaic County Court. It directed that the Clerk of the Passaic County Court accept such bond, and that upon its posting, Thomas be released from further custody pending disposition of the instant appeal.

The state's appeal urges.

(1) that the district court's decision that a writ of habeas corpus should issue was error, and

(2) that the district court was without power:

(a) to order a habeas corpus petitioner's release from state custody pending appeal, or

(b) to direct that the Passaic County Court fix the amount of bail or accept a bond in an amount fixed by the district court.

The Grant of Habeas Corpus

The district court's decision that the writ should issue was made, on the basis of the state court record without an evidentiary hearing, on the ground that identification evidence used at the trial violated due process. Thomas urged as an additional ground for granting the writ that the state trial court had coerced a verdict by use of an *Allen* charge. The district court did not regard this charge as an error of constitutional dimensions. But the court did point out that the necessity for the charge, i. e. the fact that the jury was unable to agree, tended to show that the identification errors could not, under Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), be regarded as harmless. Having examined the transcript of the state court trial, we affirm the order granting the writ.

The indictment on which Thomas was tried grew out of the robbery on March 22, 1968, by two Negro males of a real estate office conducted by Edward Cosmi. His father, John Cosmi, was also in the office that evening. The district court held that due process violations occurred in the admission into evidence of testimony by John Cosmi (1) as to a pre-trial photographic identification of Thomas and (2) as to an in-court identification of Thomas.

██ The state's basic contention is that the ruling of the state trial judge admitting evidence of the challenged pre-trial photographic identification by John Cosmi was a determination of a factual issue within the meaning of 28 U.S.C. § 2254(d), and hence presumptively correct unless one of the eight exceptions set forth in § 2254(d) applies. But the determination that evidence of the challenged pre-trial photographic identification was admissible was at best a ruling on a mixed question of law and fact. As the Supreme Court observed in Townsend v. Sain, 372 U.S. 293, 309 n.6, 83 S.Ct. 745, 755, 9 L.Ed.2d 770 (1963):

"By 'issues of fact' we mean to refer to what are termed basic, primary, or historical facts: facts 'in the sense of a recital of external events and the credibility of their narrators. . . .' Brown v. Allen, 344 U.S. 443, 506, 73 S.Ct. 397, 97 L.Ed. 469 (opinion of Mr. Justice Frankfurter). So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense."

Whether a pre-trial identification has been conducted in an impermissibly suggestive manner, and, hence, is inadmissible is, to be sure, in one sense a question of fact. But it is a question to be determined by applying to a given collection of historical facts a defined legal standard. That defined legal standard is, moreover, a federal standard. Review by a federal habeas corpus court of a determination reflecting the application of a federal legal standard to historical facts is not barred by 28 U.S.C. § 2254(d). The most common instance of federal review of such mixed questions of historical fact and legal standard is federal review of the voluntariness of confessions. Perhaps the classic statement of the rule appears in Watts v. Indiana, 338 U.S. 49, 50, 69 S.Ct. 1347, 1348, 93 L.Ed. 1801 (1949):

> "On review here of State convictions, all those matters which are usually termed issues of fact are for conclusive determination by the State courts and are not open for reconsideration by this Court. Observance of this restriction in our review of State courts calls for the utmost scruple. But 'issue of fact' is a coat of many colors. It does not cover a conclusion drawn from uncontroverted happenings, when that conclusion ·incorporates standards of conduct or criteria for judgment which in themselves are decisive of constitutional rights. Such standards and criteria, measured against the requirements drawn from constitutional provisions, and their proper applications, are issues for this Court's adjudication."

*See also* Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968); Greenwald v. Wisconsin, 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968); Clewis v. Texas, 386 U.S. 707,

87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). Each of these cases, like Watts v. Indiana, *supra*, arose under the Supreme Court's certiorari jurisdiction to review final state court action, and thus, technically, none is a construction of 28 U.S.C. § 2254(d). But Townsend v. Sain, *supra*, makes clear that a habeas corpus court must observe the same mixed question of fact and law distinction as does the Supreme Court on certiorari from a state court. And § 2254(d) is no more than a codification of the standards announced by the Court in that case.[1] The Court implicitly recognized as much when, in Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), a habeas corpus case, it made its own independent determination that a confession was voluntary, and in Procunier v. Atchley, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971), another habeas corpus case in which it independently reviewed the state court record and concluded that the California courts ". . . gave full consideration to the issue of voluntariness of the respondent's statement and that they applied correct standards of constitutional law in upholding its admission in evidence." 400 U.S. at 454, 91 S.Ct. at 490.[2] Indeed, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which for present purposes is most closely in point, is a habeas corpus case in which, after the 1966 amendments to 28 U.S.C. § 2254, the Court, acting on the basis of the state court record, made its own determination of a mixed question of law and fact—whether the pretrial identification procedure employed was so impermissibly suggestive as to bar testimony at the trial with respect to it. The district court here did the same, though it reached an opposite conclusion on the merits. Stovall v. Denno, *supra*, makes clear that jurisdiction to

---

1. "Congress in 1966 amended 28 U.S.C. § 2254 (see 1964 ed., Supp. V), so as substantially to codify most of the habeas corpus criteria set out in Townsend v. Sain." Procunier v. Atchley, 400 U.S. 446, 451 n. 6, 91 S.Ct. 485, 488, 27 L.Ed. 2d 524 (1971).

2. In United States ex rel. Dickerson v. Rundle, 430 F.2d 462 (3rd Cir. 1970), cert. denied, 408 U.S. 928, 92 S.Ct. 2498, 33 L.Ed.2d 332 (1972), this court, similarly, reviewed a state court record and made an independent determination of such a mixed question of law and fact.

do so is not eliminated by 28 U.S.C. § 2254(d).[3]

A somewhat different issue is presented with respect to the district court's ruling that the admission of John Cosmi's in-court identification testimony was a due process violation. Assuming a pre-trial identification procedure so impermissibly suggestive as to violate due process, the witness who has been subjected to such a procedure may not make an in-court identification unless the state establishes by clear and convincing evidence that the in-court identification has an origin independent of the illegal pre-trial identification procedure. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); United States v. Zeiler, 447 F.2d 993 (3rd Cir. 1971) (Zeiler II).[4] It may be argued that since the question of "taint" of the in-court identification will often involve credibility judgments, the decision of that issue is more closely a pure question of fact than a mixed question of fact and law. However, our *Zeiler II* opinion, inferentially at least, treats the issue as one calling for the application of federal legal standards to historical facts. We do not in this case reach the application of § 2254(d) to the "taint" issue, however, for here the state concedes:

"The State submits that the trial court never reached the issue of taint. Rather, it considered only whether the photographic identification procedure was so unnecessarily suggestive to the identifying witness as to give rise to a very substantial likelihood of misidentification. The trial court found that the procedure did not possess that capacity, and therefore permitted the introduction of testimony relating to it. . . . Once the court determined that this identification testimony was admissible, it had no occasion to consider the adjunct question of taint. These conclusions were affirmed by the Appellate Division." (Appellants' Brief at 22).

The state court record bears out this concession. Thus, assuming, as the district court held, that the photographic identification to which John Cosmi had been subjected was illegally suggestive, the state court record simply contains no finding to which, under § 2254(d), deference might be owed. The state court record establishes that the trial court admitted John Cosmi's in-court identification without the federally required finding, by clear and convincing evidence, of freedom from taint.

Thus, the state's position on appeal from the order granting the writ depends entirely upon the suggestibility of the pre-trial photographic identification procedure to which John Cosmi was subjected. If, on the merits, the district court correctly held that it was unduly suggestive, it falls, and the in-court identification on this record falls with it.

We reject, as well, the state's contention that the district court erred in ruling that John Cosmi had been subjected to an unduly suggestive pre-trial photographic identification. The indictment, as we pointed out above, grew out of the March 22, 1968 robbery by two Negro males of a real estate office conducted by Edward Cosmi. John Cosmi, age 69, was there at the office assisting his son. During the robbery he had very little opportunity to observe the perpetrators

---

3. If we were compelled to read the words "factual issue" in § 2254(d) as broadly as the state urges, we would in any event hold that on consideration of ". . . that part of the record of the State court proceeding in which the determination of such factual issue was made, . . . such factual determination is not fairly supported by the record." 28 U.S.C. § 2254 (d) (8).

4. United States ex rel. Reed v. Anderson, 461 F.2d 739 (3rd Cir. 1972) made no change in this rule. It merely made inapplicable to photographic identifications the per se prophylactic presence of counsel rule announced in United States v. Wade and Gilbert v. California for corporeal identifications (lineups).

because at first he was in a back room, and moments after he came in contact with them a blow rendered him unconscious. His testimony about his observations at the time of the robbery is hardly clear and convincing. He was hospitalized after the robbery, and thereafter suffered from dizziness.

On March 23, 1968, Edward Cosmi went through a collection of mug shots and picked out a photograph which proved to be that of Thomas. Thomas was arrested on Sunday evening, March 24, 1968. At 2:30 A.M. on March 25, Edward Cosmi was invited to police headquarters, where he identified Thomas. Thomas was shown to Edward Cosmi singly in a room full of white detectives. The trial court would not permit testimony by Edward Cosmi about the March 25, 1968 identification at the police headquarters, but over objection did permit Edward Cosmi to identify Thomas in court and permitted testimony about his earlier photographic identification.[5] After the March 25, identification at the police station by Edward Cosmi, a criminal complaint was signed, and Thomas was continued in custody.

On March 27, John Cosmi, who had been released from the hospital the day before, was taken to the police station by his son Edward. Although Thomas had been charged, was in custody, and thus was available for a corporeal line-up, none was held. Instead, John, in Edward's presence, was shown a collection of photographs. He testified that his son picked out a photograph and asked him if this was one of the men, and he agreed. (N.T. 1–54, 3–18). Evidence of this out-of-court identification was permitted over objection at the state court trial. The district court held that the procedure employed was so unduly suggestive as to violate due process.

In Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968), the Court held:

". . . that convictions based on eyewitness identification . . . by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

When an adult son takes his recently injured and dazed father virtually from a hospital bed to the police station, and there picks out for him a photograph of a person whom the son has previously identified, the procedure employed involves a substantial likelihood of misidentification. The father obviously was aware of the prior identification, of his own limited opportunity to make an observation, and of the son's greater opportunity to do so. The record discloses the complete absence of any precautions against suggestibility and the presence of several factors tending to create the likelihood of misidentification. Thus, we agree with the district court that the pre-trial photographic identification procedure to which John Cosmi was subjected on March 27, 1968, did not meet minimum due process standards. The trial court committed error of constitutional dimensions in permitting evidence of the March 27, 1968 photographic identification for the truth of the matter asserted, and in permitting the witness to make an in-court identification without first finding by clear and convincing evidence that the in-court identification had an independent source.

One other point strenuously urged by the state bears mentioning. It is contended that because at the police station on March 27, 1968, Edward Cosmi, rather than a police officer, picked out Thomas' photograph, the suggestiveness in no way involved state action, and

---

5. Prior to appellee's sentencing, Edward Cosmi recanted his identification in an affidavit which was filed in support of a motion for a new trial. That motion was withdrawn in consideration of a dismissal of an earlier indictment.

hence in no way implicated the fourteenth amendment. This argument is a bit wide of the mark, for the due process violation occurs not when the suggestive identification procedure occurs, but when it, or its fruits, is used as evidence against a defendant in a trial. But aside from this obvious point, the record here discloses that the police were involved in the impermissible identification procedures. Indeed, Thomas urges that the use of a photographic lineup after he was charged with a crime, while he was in custody and available for a corporeal lineup was a device whereby the police circumvented the presence of counsel rule. United States v. Wade, *supra*; Gilbert v. California, *supra*; *cf.* Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The district court did not reach that issue, nor, on this record, do we.

■ Thomas contends that use of the *Allen* charge was an additional ground for issuing the writ. In United States v. Fioravanti, 412 F.2d 407, 420 (3rd Cir.), cert. denied, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1968), we prohibited, prospectively, use in the federal courts of this circuit of this somewhat coercive method of encouraging resolution of jury deadlocks. *See also* United States v. Burley, 460 F.2d 998 (3rd Cir. 1972). We did not, however, lay down a rule of constitutional law. Unless the Supreme Court sees fit to reconsider Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the state courts remain free to rely upon it. We place no more significance on the use of a charge patterned on that case than did the district court. The necessity for its use is, as the district court suggested, some indication that had the identification evidence of John Cosmi been excluded, a not-guilty verdict might have resulted.

Thomas' Release Pending Appeal

■ The state also urges that the district court lacked the power (a) to order Thomas' enlargement from state custody pending appeal, and (b) to direct that the Passaic County Court (1) fix the amount of bail during such enlargement or (2) accept a personal recognizance from Thomas in an amount fixed by the district court as security during such enlargement. These issues are not moot, since the period of Thomas' enlargement between the time our mandate reaches the district court and the time of any state court re-trial may be considerable, and since a petition for certiorari is possible. During these periods the only bond securing his appearance at a re-trial, if we do not act on this aspect of the state's appeal, would be that which the district court ordered.

■ We hold (a) that the district court did have the power to order Thomas' enlargement from state custody pending appeal, but (b) that it lacked authority to direct the Passaic County Court either (1) to fix an amount of bail during such enlargement, or (2) to accept any bail bond, secured or unsecured, from Thomas.

■ Substantial confusion has arisen in this case and in other habeas corpus cases from the reference by counsel for the petitioner or the respondent or both to an enlargement of a habeas corpus petitioner on "bail". The standards for release and for bail set forth in 18 U.S.C. §§ 3141–3152 and Rule 46, Fed.R.Crim.P., and the cases construing these provisions, are irrelevant to the release by federal courts of state prisoners. They deal with federal criminal proceedings only. The only authority for the release by a federal court of a state prisoner is the habeas corpus statute, 28 U.S.C. §§ 2241–2255.[6] Habeas corpus is a civil proceeding. "Bail", which has a criminal connotation, is a misnomer in a habeas corpus case, and neither the habeas corpus statute nor applicable court rules use the term. The power to enlarge a state prisoner at any time before a habeas corpus judgment becomes final, then, exists, if at all, as a

---

6. And possibly in rare instances the Civil Rights Acts, 28 U.S.C. § 1343, 92 U.S.C. § 1983 et seq.

part of the courts' habeas corpus jurisdiction.

■ Where a state prisoner has obtained from a district court a decision that his state confinement is unlawful, he is entitled to an order that such confinement be ended. The district court's final order may be in one of two forms. It may unconditionally order the prisoner's release, or it may order his release at some time in the near future if, in the meantime, he has not been afforded a new trial. Either form of order is appealable. In the typical new trial type order, such as is here appealed from, the time fixed for a new trial will be considerably shorter than the time periods fixed in the Federal Rules of Appellate Procedure for docketing, briefing and arguing an appeal. Thus, either type of order, if the state appeals, will present the issue of custody of the petitioner pending appeal. The practice in such cases is governed by Rule 23(c), Fed.R. App.P.:

"Pending review of a decision ordering the release of a prisoner in such a proceeding, the prisoner shall be enlarged upon his recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme Court, or a judge or justice of either court shall otherwise order."

An understanding of the full import of Rule 23(c) requires some knowledge of its history. The equivalent of that rule has been in effect since at least 1886. In that year the Supreme Court adopted a rule:

Ordered, That the following regulations be established under section 765 of the Revised Statutes:

### RULE 34.

### CUSTODY OF PRISONERS ON HABEAS CORPUS.

\* \* \* \* \* \*

3. Pending an appeal from the final decision of any court or judge discharging the prisoner, he shall be enlarged upon recognizance, with surety, for appearance to answer the judgment of the appellate court, except where, for special reasons, sureties ought not to be required." 117 U.S. 708.

This rule or its equivalent has been a part of the rules of the Supreme Court ever since. Its present equivalent is Rule 49(3) of the Supreme Court Rules. The reference to Revised Statutes, § 765 is to the statute which gave the Supreme Court general authority to regulate habeas corpus proceedings, including regulations "for the custody and appearance of the person alleged to be restrained of his or her liberty." Act of Feb. 5, 1867, ch. 28, § 1, 14 Stat. 385. Rule 34 became Rule 42 in the 1925 Rules, 266 U.S. 685, Rule 45 in the 1928 Rules, 275 U.S. 629, and Rule 49 in the 1954 Rules, 346 U.S. 999. Revised Statutes, § 765 was repealed in the 1948 revision of title 28, but the statutory authority for Rule 49(3) of the Supreme Court Rules cannot be doubted. See 28 U.S.C. § 2071 (rule making); 28 U.S.C. § 2101(f) (stays); 28 U.S.C. § 2251 (stays in habeas corpus cases); 28 U.S. C. § 1651 (all writs).

When in 1967 the Supreme Court promulgated the Federal Rules of Appellate Procedure, it included in Rule 23 a rule identical in language with its own Rule 49. Thus, Rule 23(c) is in direct succession from the original Supreme Court Rule 34(3) adopted in 1886. Even though until 1967 it appeared in the Supreme Court rules, at all times it has dealt with the duty of the district courts in habeas corpus cases. In 1886 the language requiring the enlargement of the successful habeas corpus petitioner was mandatory. The only discretion was in deciding whether a surety on his recognizance ought to be required. The mandatory language with respect to enlargement of the successful petitioner was carried forward until 1967. In that year, however, Rule 49(3) was revised to provide that the successful petitioner "shall be enlarged upon his recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or this

court, or a judge or justice of either court, shall otherwise order." The revised language was carried into Rule 23(c), Fed.R.App.P.

Thus from 1886 to 1967 a judge granting habeas corpus relief was under a flat mandate to enlarge the petitioner pending appeal. In United States ex rel. Collins v. Claudy, 204 F.2d 624 (3rd Cir. 1953) this court, reversing the denial of a habeas corpus petition and ordering that the writ issue, recognized that the state might seek a reversal in the Supreme Court. It held, therefore,

"... we will entertain a request for the enlargement of the petitioner on bail pending final disposition of this case if any further proceedings shall postpone the issuance of the mandate of this court in normal course. See our Rule 15(3); Supreme Court Rule 45(3)." *Id.* at 630.

Since 1967 an order such as was entered in the *Collins* case would not be mandatory. But it is clear from the history of the rule prior to the 1967 change that there is still a very strong presumption that a petitioner holding a final judgment that his detention is unlawful should not be left in state custody. The 1967 change was not intended to adopt a general rule in favor of custody pending appeal, but only to substitute discretion, to be exercised in limited situations, for what was formerly a mandatory release requirement. *See* E. Bosky and E. Gressman, The 1967 Changes in the Supreme Court's Rules, 42 F.R.D. 139, 161 (1967).[7] There is no question, then, that the district court had the power to order Thomas' enlargement from state custody pending the state's appeal.

But the recognizance referred to in the 1886 rules is a recognizance to answer to the judgment of the federal court on appeal, and although Rule 23(c) no longer contains the express language "for appearance to answer the judgment of the appellate court", no change in substance was intended. In particular, it was not intended that the district courts could require either that the state courts accept or that a petitioner give recognizance to the state rather than the federal court. Indeed, it may be doubted whether such a rule would be within the rule-making power of the Supreme Court, since it is nowhere authorized by the habeas corpus statute. The habeas corpus court by its writ requires that the respondent be delivered up to its custody. It may at some point conclude that state custody should be restored, and it is naturally interested in the availability of the petitioner to respond to its judgment. Thus, any recognizance, with or without surety, must in a habeas case run to and be filed with the federal court. This is true not only in the situations where, pending appeal, disposition must be made pursuant to Rule 23, Fed.R.App.P., for the custody of the petitioner, but in situations where pending conclusion of a habeas corpus hearing the federal court may conclude that continued state custody is inappropriate. *See* Johnston v. Marsh, 227 F.2d 528 (3rd Cir. 1955). It is true, as well, where the district court order is conditioned upon a re-trial but the district court concludes that enlargement is proper.

7. There is a line of cases which suggests that the so-called "conditional" grant of the writ, ordering that the prisoner be released unless the state re-tries him in a specified period, is not a "decision ordering the release of a prisoner" within the meaning of Supreme Court Rule 49(3). The leading case is O'Brien v. Lindsey, 202 F.2d 418 (1st Cir. 1953). *Accord* Lewis v. Henderson, 356 F.2d 105 (6th Cir. 1966); United States ex rel. Calhoun v. Pate, 341 F.2d 885 (7th Cir.), cert. denied, 382 U.S. 945, 86 S.Ct. 402, 15 L. Ed.2d 354 (1965); Painten v. Massachu-

setts, 254 F.Supp. 246 (D.Mass), aff'd, 368 F.2d 142 (1st Cir. 1966), cert. granted, 386 U.S. 931, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967), cert. dismissed, 389 U.S. 560, 88 S.Ct. 660, 19 L.Ed.2d 770 (1968). These cases do not hold that enlargement is improper under such an order, but only that during the time period granted the state the mandatory language of the rule as it existed prior to 1967 is inapplicable. All are pre-1967 cases and all are obsolete by virtue of the 1967 amendment to Rule 49(3) giving the district court discretion.

Thus, the district court order, to the extent that it directed the Passaic County Court to fix bail, and to the extent that it directed the Clerk of the Passaic County Court to accept a personal recognizance in an amount fixed by the district court, was in error.

The judgment of the district court granting the writ of habeas corpus and ordering the petitioner's enlargement from state custody pending the state's appeal will be affirmed. Those parts of the order appealed from which directed that the Passaic County Court fix bail, and which directed that the Clerk of the Passaic County Court accept from petitioner a personal recognizance bond in the amount of $25,000 will be vacated and the case will be remanded to the district court for a prompt hearing on notice to the petitioner at which the district court will determine the amount of any recognizance and the surety, if any, on any recognizance, which shall be required by the district court to assure (1) the petitioner's compliance with any district court order with respect to his availability to the State of New Jersey for a re-trial on the indictment here involved, and (2) the petitioner's compliance with any judgment which may be rendered by the Supreme Court.