**UNITED STATES of America ex rel. Edmund George TAYLOR, Petitioner,**

v.

**Walter W. REDMAN and the Attorney General of the State of Delaware Richard S. Gebelein, Respondents.**

**Civ. A. No. 79–279.**

United States District Court,
D. Delaware.

Sept. 12, 1980.

On Motion For Stay Pending Appeal
Nov. 21, 1980.

Richard E. Fairbanks, Jr. and David M. Lukoff, Asst. Public Defenders, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondents.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this petition for habeas corpus petitioner, Edmund G. Taylor, challenges a verdict rendered by a Delaware state court on December 12, 1977, finding him guilty on several charges. He contends that the double jeopardy clause of the fifth amendment bars this conviction because in an earlier prosecution the jury found petitioner not guilty by reason of mental illness on charges arising out of the same series of events that gave rise to the trial and conviction now under challenge.

On August 20, 1975 petitioner, armed with a handgun, forcibly entered the home of his sister–in–law, located in New Castle County, Delaware. There he bound his niece and nephew, struck his sister–in–law, and forced her into his car. He then drove to a location in Kent County, Delaware, where he raped her. On November 3, 1975 a Kent County grand jury indicted petitioner for first degree rape, possession of a deadly weapon during the commission of a felony, and first degree kidnapping. At trial on May 6, 1976, the jury returned a verdict of not guilty by reason of mental illness on all counts. Subsequently, petitioner was tried in New Castle County on an indictment returned on November 4, 1975. On December 12, 1977, the New Castle County jury found the petitioner guilty of first degree burglary, second degree assault, and two counts of second degree kidnapping.[1] On February 3, 1978 petitioner

---

1. During the intervening period petitioner attempted, in several proceedings, to prevent the second prosecution. He filed a petition with this Court, which he characterized as a petition for a writ of habeas corpus. On October 26, 1977, the Court dismissed the petition for failure to exhaust state remedies. Petitioner subsequently filed an action under 42 U.S.C. § 1983, seeking to enjoin the second prosecution, which Chief Judge Latchum dismissed on

November 11, 1976. The defendant also moved the state court to dismiss the indictment, as a violation of federal and state law, and some of the charges were nolle prossed. On November 18, 1976 Judge Longobardi denied the motion as to the remaining charges, those on which petitioner was ultimately convicted. On September 6, 1977, the Supreme Court of Delaware dismissed petitioner's appeal from the denial,

was sentenced to prison terms of five years on the second degree assault charge and each of the two second degree kidnapping counts, and to a term of twenty years on the charge of burglary. On May 4, 1978 the Supreme Court of Delaware affirmed the decision. On June 8, 1978 petitioner filed this petition. Both parties have moved for summary judgment. The Court finds in favor of the petitioner.

The seminal case governing collateral estoppel in criminal cases is the decision of the Supreme Court in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In that case several men robbed six participants in a poker game. One man was tried for the robbery of one of the participants and found not guilty, *id.* at 439, 90 S.Ct. at 1191, due largely to the inability of the prosecution clearly to identify the accused as one of the robbers. Several weeks later the same man was brought to trial again, on a charge of robbing a different one of the poker players. This time the identification evidence was stronger and the defendant was found guilty. The Supreme Court held that the second prosecution and conviction violated the double jeopardy clause. Observing that collateral estoppel had long been an established rule of federal criminal law, the Court clarified that the principle is incorporated in the double jeopardy clause and, therefore, applicable in state courts through the fourteenth amendment under *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It held that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194; *see Harris v. Washington, et al.*, 404 U.S. 55, 56, 92 S.Ct. 183, 184, 30 L.Ed.2d 212 (1971). Accordingly, the Court

found that the state was estopped to bring the second prosecution, because the jury in the prior proceeding had determined that the defendant was not one of the robbers.

In upholding the constitutionality of the second prosecution in the case *sub judice*, the Supreme Court of Delaware held that the Kent County jury only was required to reach a determination as to the mental health of the petitioner at the time of the offenses that took place in Kent County. *Taylor v. State of Delaware*, 402 A.2d 373 (Del.Sup.1979). For this reason it held that a finding by the Kent County jury that the petitioner was mentally ill at the time of the New Castle County offenses was not essential to its judgment that he was mentally ill at the time of the offenses on which it was rendering a verdict. Distinguishing the case from *Ashe* on this basis, the Delaware Court held that the State was not foreclosed from litigating the issue of petitioner's mental health at the time of the New Castle County offenses. *Id.* at 375.

It is true that the Delaware statute governing the affirmative defense of mental illness did not require the jury in the Kent County prosecution to reach the question of the mental well being of the petitioner immediately prior to the time of the acts charged in the indictment.[2] Theoretically, the jury could have determined that the petitioner was mentally ill at the time of the offenses in Kent County without determining that he was also mentally ill at the time of the New Castle County offenses. The difficulty with this reasoning is that it ignores the mandate of *Ashe*, which does not limit criminal collateral estoppel to determinations strictly necessary to the original verdict according to the terms of the indictment. To the contrary, *Ashe* requires a court to "examine the record of a prior proceeding, taking into account the plead-

---

on the ground that it was premature in that the order was interlocutory.

**2.** Section 401(a) of Title 11 of the Delaware Code provides:

In any prosecution of an offense, it is an affirmative defense that, at the time of the conduct charged, as a result of mental illness

or defect, the accused lacked substantial capacity to appreciate the wrongfulness of his conduct or lacked sufficient will power to choose whether he would do the act or refrain from doing it.

The trial judge instructed the jury in accordance with this provision.

ings, evidence, charge, and other relevant matters and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." 397 U.S. at 444, 90 S.Ct. at 1194; *see Turner v. Arkansas*, 407 U.S. 366, 368, 92 S.Ct. 2096, 2098, 32 L.Ed.2d 798 (1972). Thus, in *Ashe* there was a theoretical possibility that the original jury based its acquittal on a finding that the alleged victim had not been robbed. On consideration of the evidence, however, the Court held that the only possible basis for the verdict of not guilty was a determination that the defendant was not one of the robbers. 397 U.S. at 445, 90 S.Ct. at 1195. Similarly, in the case *sub judice*, the Court must realistically examine the evidence. It may not confine its inquiry to whether there is any conceivable legal theory on which the jury could have based its verdict other than that advanced by the defense.

Because in *Ashe* the original jury was required to reach the identity of the defendant, it could be argued that the case under consideration is distinguishable, in that the Kent County jury was required to determine the mental well being of the petitioner over a broad period of time only by the nature of the evidence. In *Ashe* it was necessary to examine the evidence to determine on which of several possible grounds the jury based its acquittal, whereas in the case *sub judice* the Kent County jury clearly based its verdict on a finding that the petitioner was mentally ill at the time of the charged offenses, arguably rendering further inquiry gratuitous. This argument, however, is highly technical, in contrast with the realistic approach dictated by *Ashe*. Moreover, this position cannot itself withstand the highly technical scrutiny it applies. Although in *Ashe* the law required the jury to reach the identity of the defendant, the acquittal technically only required finding that the defendant was not the robber of the victim at that trial; in isolation from the evidence it did not imply that he did not rob the victim in the second trial.

Finally, upholding this conviction on the ground that the law did not strictly require the determination that the petitioner argues should be foreclosed from litigation would undercut the underlying principle of the double jeopardy clause:

> that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Benton v. Maryland*, 395 U.S. 784, 795–96, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707 (1969); *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); *Brown v. Gunter*, 562 F.2d 122 (1st Cir. 1977); *United States v. Martin*, 561 F.2d 135 (8th Cir. 1977). In discussing the rationale for applying collateral estoppel as a component of the double jeopardy clause, the Third Circuit Court of Appeals has found:

> The justification for such an application grows out of the fifth amendment itself, which has as one of its objectives the protection of citizens from repetitive and harassing lawsuits brought by the government. Accordingly, the prosecution may not seek, through the device of separate trials on each count brought against a particular defendant, to repeat litigating the same basic issues until it is ultimately successful.

*United States v. Keller*, 624 F.2d 1154, 1158 (1980), *quoting United States v. Standefer*, 610 F.2d 1076, 1092 (3d Cir. 1979) (en banc), *aff'd*, 444 U.S. 1011, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). Allowing a conviction such as in the case at bar to stand without examining the record would permit repeated prosecution on technically distinct crimes despite successive verdicts of not guilty by reason of mental illness. As long as the prosecution could establish that a slight period of time separated each alleged crime there would be no constitutional bar to repeated prosecution, even on several

counts that essentially comprise a unitary course of action. Clearly this would increase the likelihood that a criminal defendant, although entitled to an affirmative defense of mental illness or defect, would ultimately be found guilty. Moreover, it would directly contradict the holding of the Third Circuit Court of Appeals that the prosecution may not repeatedly seek to litigate the same basic issues until achieving success.

■■■ Having examined the record of the first trial, this Court concludes that a rational jury could not have reached a verdict of not guilty by reason of mental illness without determining that the petitioner was mentally ill during the entire series of actions comprising the crimes charged in the two proceedings. At trial, all of the evidence offered to prove the mental illness of the petitioner aimed at establishing that it preceded and caused the actions. Neither the defense nor the prosecution attempted to break down the duration of the mental illness within the period from the original abduction to the release of the victim. In eliciting testimony from state and defense psychiatrists concerning the mental state of the petitioner, both the prosecution and the defense repeatedly directed the attention of their witnesses to August 20, 1975 without specifying the time more precisely. *E. g.,* Tr. 172, 222, 227, 230, 237, 260, 273, 287, 302. There was no testimony to the effect that petitioner became mentally ill after leaving New Castle County. Rather, the evidence presented by the defense indicated that the petitioner had a long standing obsession or neurosis, which underlay his actions on August 20, 1975. *See, e. g.,* Tr. 170–71; 227–29. The psychiatrists for the defense testified to the effect that on that date the petitioner lacked the will power to restrain his actions, *see, e. g.,* Tr. 172–73; 230, while the state psychiatrist testified to the contrary. *See e. g.,* Tr. 273, 302. The jury could have rejected the defendant's psychiatric evidence and accepted the prosecution's expert testimony. It did not do so. In accepting the defense evidence the jury necessarily determined that the petitioner was mentally ill prior to and in the course of the entire sequence of actions on August 20. There was no evidentiary basis for finding him mentally ill only during the commission of the Kent County crimes. The finding that the petitioner was not guilty by reason of mental illness, therefore, could only have been based on a determination that the petitioner was mentally ill when he broke into the house and during the entire ensuing sequence of actions. Based on the evidence presented at trial by the prosecution and defendant, a rational jury could not have concluded that the petitioner was mentally ill at the time of the rape in Kent County but sane at the time of the breaking in, kidnapping, and assault in New Castle County. *Cf. New Mexico v. Nagel,* 87 N.M. 434, 535 P.2d 641 (Court of Appeals of New Mexico, 1975) (collateral estoppel precluded conviction of false imprisonment where defendant had been acquitted by reason of mental illness on assault charge arising from attack occurring 16 hours later than imprisonment).

The Delaware Supreme Court also found that, even if the Kent County jury determined that the petitioner was mentally ill during the New Castle County crime, the determination is invalid because it exceeded the jurisdiction of the Kent County court. The court based this finding on the limited scope of the indictment. Under state venue law prosecution of a crime must be had in the county in which it is alleged to have occurred. 401 A.2d at 325–26. Consequently the Kent County indictment only extended to the crimes that allegedly occurred in that county.

■■■ This position is analytically no different from that already discussed. The Kent County Court had jurisdiction to try the original case and, therefore, had jurisdiction to reach such factual determinations as were supported by the evidence and necessary to support the verdict. The *Ashe* requirement that constitutional collateral estoppel be applied "with realism and rationality," precludes limiting the determination of a jury to the minimum necessary to return a verdict of not guilty under the precise terms of an indictment; considera-

tion of the evidence is necessary. In the Kent County prosecution the evidence supported a verdict of not guilty by reason of mental illness only if the jury determined that the petitioner had a long standing mental illness that gave rise to the entire series of actions on August 20, 1975. Moreover, that Delaware state law limits the venue of its courts should not obscure the fact that a single sovereignty prosecuted the petitioner in both proceedings. *See Virgin Islands v. Dowling*, 633 F.2d 660 (3d Cir. 1980); *Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). In both prosecutions the jury derived its power to adjudicate from the State of Delaware.

The record before the Court does not clearly indicate the status of the petitioner pursuant to the initial verdict of not guilty by reason of mental illness. It appears that on May 6, 1976 the state court ordered that petitioner be committed under section 403 of Title 11 of the Delaware Code. That section provides that a person found not guilty by reason of mental illness be committed to the Delaware State Hospital. It further provides that a person so committed shall remain in the hospital "until the Superior Court of the county wherein the case was tried is satisfied that the public safety will not be endangered by his release." Although the record is unclear, it appears that the petitioner moved the state court to terminate his commitment in accordance with section 403 prior to the second trial. Because it could affect the specific relief to which the petitioner is entitled, the Court requests the parties to complete the record by stipulation with a certified copy of any orders entered by the Superior Court in and for Kent County relating to commitment and release therefrom under 11 *Del.C.* § 403. Further, the Court requests the parties to promptly submit briefs addressing the appropriate remedy to which the petitioner is entitled pursuant to the present grant of summary judgment in his favor if they cannot otherwise agree.

An order will be entered denying the motion of the respondent for summary judgment and granting the motion of the petitioner for summary judgment, instructing the parties to supplement the record and submit briefs on the issue of relief, if necessary.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

### On Motion For Stay Pending Appeal

On September 12, 1980, this Court entered summary judgment in favor of petitioner, Edmund G. Taylor, holding that his conviction by the State of Delaware on charges of burglary, assault and two counts of kidnapping was barred by the double jeopardy clause of the fifth amendment. The Court concluded that a prior jury verdict finding Taylor not guilty by reason of mental illness of other crimes alleged to have been committed on the same date as those in question precluded the State, by reason of collateral estoppel, from relitigating the question of Taylor's mental health. Now before the Court is the motion of the State of Delaware to stay issuance of the writ of habeas corpus pending appeal.

At the time that this Court entered summary judgment the record did not clearly reflect Taylor's status under the prior jury verdict finding him not guilty by reason of mental illness. The Court therefore postponed determination of the relief to which Taylor is entitled until such time as the record could be supplemented on this point. The Court has since been advised that on October 26, 1976, the Delaware Superior Court determined that Taylor was no longer a threat to society and that public safety would not be endangered by his release. The Superior Court therefore ordered Taylor released from Delaware State Hospital, where he had been committed as a result of the jury verdict that he was not guilty by reason of mental illness. In December 1977 Taylor was convicted of the offenses that are the subject of this habeas corpus proceeding.

The State of Delaware has waived any claim that it is entitled to subject Taylor to

further psychiatric or psychological examination before his release and has stipulated that this Court's grant of summary judgment entitles Taylor to an order that he be released from custody. The parties have further stipulated, however, that this Court should not issue the writ of habeas corpus until it has ruled upon the State's motion for a stay pending appeal. The parties completed briefing the question of a stay of November 7, 1980, and on November 18 waived oral argument that had been scheduled for November 19, 1980.

■ Although the State has styled its motion as one for a "stay," the Court must look to Rule 23(c) of the Federal Rules of Appellate Procedure to determine Taylor's right to release pending review of this Court's judgment by the Court of Appeals. Rule 23(c) provides:

> Release of Prisoner Pending Review of Decision Ordering Release. Pending review of a decision ordering the release of a prisoner in [a habeas corpus] proceeding, the prisoner shall be enlarged upon his recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme Court, or a judge or justice of either court shall otherwise order.

The parties having agreed, based upon this Court's decision, that Taylor is entitled to an order releasing him from custody, the question properly before the Court is whether it should nonetheless exercise its discretion to order that Taylor be held in custody pending review by the Court of Appeals.

The Court of Appeals in this circuit has stated that Rule 23(c) creates "a very strong presumption that a petitioner holding a final judgment that his detention is unlawful should not be left in state custody." *United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 743 (3d Cir. 1973); *see United States ex rel. Barnwell v. Rundle*, 461 F.2d 768, 770 (3d Cir. 1972). Rule 23(c) was promulgated in 1967 and was patterned after a rule of the Supreme Court which up until that time had required that a success-

ful habeas corpus petitioner be released pending appeal by the state of a district court judgment. The purpose of the 1967 changes reflected in present Rule 23(c) was "only to substitute discretion, to be exercised in limited situations, for what was formerly a mandatory release requirement." *United States ex rel. Thomas v. New Jersey, supra,* 472 F.2d at 743.

There is, however, little case law on the question of what factors should influence a court's discretionary determination of whether to release a successful petitioner pending appeal. At least one court has focused on whether the state has produced evidence indicating that the petitioner is either likely to flee the jurisdiction or is a current danger to the community. *See Sellars v. Estelle*, 450 F.Supp. 1262, 1265 (S.D. Tex.1978); *cf. Leigh v. United States*, 82 S.Ct. 994, 996, 8 L.Ed.2d 269 (1962) (Warren, Circuit Justice) (bail pending direct appeal should be denied only when bail may be abused or community may be threatened by defendant's release). In this case, the State of Delaware concedes that there is little danger that Taylor would flee the jurisdiction were he to be released pending the State's appeal. *See* Respondents' Opening Brief (Doc. No. 31) at 5. The State argues, however, that the convictions that are the subject of this proceeding and Taylor's earlier acquittal of rape and other charges by reason of mental illness are evidence of Taylor's potential danger to the community. There are several flaws in the State's position. First, the State ignores the fact that in October 1976 the Delaware Superior Court found, based upon psychiatric testimony, that Taylor was no longer a threat to society and was therefore entitled to be released from the Delaware State Hospital. The State, moreover, has offered no affidavits or other evidence of any nature that might tend to support a conclusion that Taylor currently is a danger to the community. In relying solely upon a verdict of not guilty by reason of mental illness, which was followed by a judicial finding that Taylor is no danger to the community, and upon a conviction that this Court has deter-

mined to be unlawful, the State has simply offered no evidence to support its position that Taylor should be held in custody pending appeal.

The standards applied to a request for a stay of a district court's order in civil actions other than habeas corpus proceedings also mandate Taylor's prompt release from custody. This Court has developed the principle that a stay is appropriate when "the threat of irreparable injury to the applicant is immediate and substantial, the appeal raises serious and difficult questions of law in an area where the law is somewhat unclear and the interests of the other parties and the public are not harmed substantially." *Evans v. Buchanan*, 435 F.Supp. 832, 844 (D.Del.1977). In granting summary judgment to Taylor, the Court concluded that his double jeopardy claim clearly fell within the rule of *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), that in criminal cases the prosecution may not relitigate an issue of ultimate fact that has already been determined by a valid and final judgment. Taylor's claim did present a novel factual application of the principle of collateral estoppel in a criminal case. Even assuming, however, that the issue is a serious and difficult one in an unclear area of the law, the State has failed to present any evidence that it is threatened with immediate irreparable harm. The State concedes that Taylor is not likely to flee and offers no evidence that he is a threat to the community. Should this Court's judgment be reversed by the Court of Appeals, the State will be able to return Taylor to custody to serve the balance of his sentence. By contrast, Taylor is threatened with immediate irreparable injury in the form of continued unlawful incarceration if he is not immediately released. If this Court's judgment is affirmed by the Court of Appeals, Taylor will not be subject to retrial and therefore there is not even the possibility that continued detention of Taylor might be credited against some future sentence. The Court is compelled to conclude on the basis of the facts before that it cannot permit further detention of Taylor pursuant to a conviction it has determined to have been obtained in violation of his constitutional rights.

The State in its brief requested an opportunity in which to seek a stay from the Court of Appeals should this Court deny its application for stay. This request will be granted. *See LaFrance v. Bohlinger*, 487 F.2d 506, 507–08 (1st Cir. 1973). An order will follow denying respondents' motion for a stay pending appeal and directing that the writ of habeas corpus be granted as of November 28, 1980, or as of such earlier date as the United States Court of Appeals for the Third Circuit may have granted or denied a stay of this Court's judgment.