Rubin CARTER and John
Artis, Appellee,

v.

John J. RAFFERTY et al., Appellant.

No. 85–5735 (C–70).

United States Court of Appeals,
Third Circuit.

Argued Jan. 7, 1986.
Decided Jan. 17, 1986.

Ronald G. Marmo (argued), Chief Asst. Pros., Passaic County Pros., Paterson, N.J., for appellant.

Leon Friedman, (argued), Hofstra University Law School, Hempstead, N.Y., for appellee.

Before HUNTER, GARTH and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

Rubin Carter was indicted and convicted of murder by New Jersey in 1976. His petition for a writ of habeas corpus was granted by the United States District Court for the District of New Jersey, 621 F.Supp. 533 (Sarokin, J.) on November 7, 1985.[1] On the following day, November 8, 1985, Carter executed a recognizance bond assuring his appearance on the order of the United States District Court and was released from custody.

The State of New Jersey has moved in this court to revoke Carter's enlargement and seeks an order that Carter be placed in custody pending the State's appeal of the District Court's order granting the writ. The State, asserting that Carter is a danger to the community, seeks in the alternative an order compelling him to undergo psychiatric examination so that the State may establish his dangerous propensities. In support of its application, the State has submitted various records of prison incidents and has reported, as well, an incident which occurred in 1976 during the period of Carter's enlargement after the reversal of his first conviction and prior to his second conviction. The State further asserts that Carter has steadfastly refused to undergo psychiatric examination during the past fifteen years. In light of the analysis that follows, we do not find it necessary to make reference to Carter's responses to these assertions.

## I.

Our review of the enlargement of a victorious habeas petitioner is necessarily controlled by Fed.R.App.P. 23(c) and (d). These provisions, which by their terms prescribe our plenary review, read:

(c) Release of Prisoner Pending Review of Decision Ordering Release. Pending review of a decision ordering the release of a prisoner in such a proceeding, the prisoner shall be enlarged upon his recognizance, with or without surety, unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme Court, or a judge or justice of either court shall otherwise order.

(d) Modification of Initial Order Respecting Custody. An initial order respecting the custody or enlargement of the prisoner and any recognizance or surety taken, shall govern review in the court of appeals and in the Supreme Court unless for special reasons shown to the court of appeals or to the Supreme Court, or to a judge or justice of either court, the order shall be modified, or an independent order respecting custody, enlargement or surety shall be made.

Relatively little has been written with respect to the interpretation of Rule 23, but the available authority does provide some general principles:

■ First and foremost, a petitioner who has established that his confinement is based on an unconstitutional trial is presumptively entitled to release immediately or, more commonly, after an appropriately circumscribed period to allow the state time to retry the accused. *United States ex rel. Thomas v. State of New Jersey*, 472 F.2d 735, 743 (3d Cir.1973); *United States ex rel. Barnwell v. Rundle*, 461 F.2d 768, 769, 770 (3d Cir.1972).[2]

---

1. Normally, a district court in issuing a writ provides a period of some 60 to 90 days in order to afford the state an opportunity to retry the defendant or otherwise correct the constitutional infirmity. Indeed, in *United States ex rel. Thomas v. State of New Jersey*, 472 F.2d 735 (3d Cir.1973), we recognized and approved this practice. In this case, the writ issued immediately.

2. As we stated in *Thomas:*
   Where a state prisoner has obtained from a district court a decision that his state confinement is unlawful, he is entitled to an order that such confinement be ended. The district

■ Second, the federal court has a strong interest in assuring the appearance of the petitioner in subsequent proceedings in the federal court or, if the granting of the writ is overturned on appeal, for the purpose of restoring the petitioner to state custody. *Thomas,* 472 F.2d at 743. Therefore, "any recognizance with or without surety must in a habeas case run to and be filed with the federal court." *Id.*

Third, it is clear that federal statutory bail standards relating to federal prisoners, *see* 18 U.S.C. 3141 *et seq.* (West Supp.1985), do not govern release of state prisoners under Rule 23(c) and (d).[3] *A fortiori,* state bail rules and procedures have no role in federal habeas proceedings. Indeed, Rule 23 itself does not provide any standards, factors, or conditions to be considered by the court with respect to release, other than those connected with the imposition of surety and the attendant requirement that the habeas petitioner assure the court of his presence at future federal court proceedings.

Apart from these general principles, we have little to guide us other than the language of the rule itself. There is no authoritative case law, for example, on whether the "special reasons" requirements of Rule 23(d) applies both to a "modified" order and to an "independent" order entered by a court on appeal,[4] and indeed there is little explanation in the case law of what sort of "special reason" must be demonstrated to a reviewing court in making an order "respecting custody, enlargement or surety." Rule 23(d).

### A.

The State has urged before us that Carter represents a danger to the community and therefore should be incarcerated, and that the facts necessary to support this conclusion, in addition to the materials submitted, could be obtained through a court-ordered psychiatric examination. Documents submitted in support of the State's application are intended to show that Carter is a dangerous sociopath and a human "time bomb."

■ In view of the strong federal interest identified above, we are satisfied that the power to condition release so as to assure the petitioner's future presence is a necessary incident of the federal court's power to enlarge a prevailing habeas petitioner. Therefore, if the State's application to revoke enlargement were related to Carter's likelihood of response to federal process, there is no question but that we would act under our power and authority to enter whatever constitutionally permissible order we deemed necessary to ensure that response. In our view, the "special reasons" to which Rule 23(d) refers must, at the very least, embrace those matters which are related to an assurance that the petitioner will appear in response to federal court orders.

In this case, however, the State has not urged that Carter will fail to respond to federal process. Indeed it has conceded that it is not concerned with flight. Nor has any suggestion been made by the State that, whatever propensities might be established by a psychiatric examination, they would affect flight. Its sole concern appears to be Carter's general dangerousness to society. Moreover, the psychiatric ex-

---

court's final order may be in one of two forms. It may unconditionally order the prisoner's release, or it may order his release at some time in the near future if, in the meantime, he has not been afforded a new trial. 472 F.2d at 742.

**3.** As Thomas explained:

The standards for release and for bail set forth in 18 U.S.C. §§ 3141–3152 and rule 46, Fed.R.Crim.P., and the cases construing these provisions, are irrelevant to the release by federal courts of state prisoners. 472 F.2d at 741.

**4.** Rule 23(d) provides for modification "of an initial order respecting the custody or enlargement of the prisoner" or an independent order "respecting custody, enlargement or surety," leaving open the question whether "special reasons" must be provided to satisfy each part of the rule. The logic of the Rule compels us to resolve this question by holding that "special reasons" are required to satisfy either prong of the Rule.

amination which the State asks us to order for Carter relates only to his dangerousness and does not relate to assuring Carter's appearance in future federal proceedings. Although a psychiatric examination might be justified where the State presents evidence that a petitioner's mental condition may keep him from honoring a federal court's process, an examination for this purpose was not, and is not, sought in this case, and we therefore need not consider such a circumstance.

The other reason put forth by the State for Carter's examination or incarceration—his alleged dangerousness—is a matter traditionally reserved to the state authorities to decide. It is the state and not the federal government which establishes commitment procedures, criminal and civil, for individuals who are a danger to themselves or a danger to others. *See* N.J. Const. art I, § 11; N.J.Ct.R. 3:26–1 (governing bail); N.J.Stat.Ann. § 30.4–23 *et seq.* (West 1981 & Supp.1985) (governing civil commitment); *see generally Rennie v. Klein,* 653 F.2d 836 (3d Cir.1981) (en banc), *vacated,* 458 U.S. 1119, 102 S.Ct. 3506, 73 L.Ed.2d 1381 (1982), *on remand,* 720 F.2d 266 (3d Cir. 1983). No federal statute has been called to our attention which prescribes the procedures or substantive remedies of civil and criminal commitment of state prisoners where it is a danger to the individual or community which is asserted. Indeed, the one federal statute which we have found and which pertains to committees in the federal and not the state system, emphasizes that future commitment is the responsibility of the state and not the federal authorities. 18 U.S.C. § 4241 *et seq.* ("Offenders [Federal] with Mental Disease and Defect"). In particular, 18 U.S.C. § 4246(g) provides:

(g) Release to state of certain other persons. If the director of a facility in which a person is hospitalized pursuant to this subchapter certifies to the Attorney General that *a person, against whom all charges have been dismissed for reasons not related to the mental condition of the person, is presently suffering from a mental disease or de-fect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried for the purpose of institution of State proceedings for civil commitment.* If neither such State will assume such responsibility, the Attorney General shall release the person upon receipt of notice from the State that it will not assume such responsibility, but not later than ten days after certification by the director of the facility. (Emphasis added)

■ Thus in the context of a federal committee, against whom criminal charges have been dismissed for reasons not related to his mental condition but who nevertheless may constitute a danger upon release, the relevant legislation directs that the determination of "dangerousness" can only be made by the state in accordance with state procedures. It is noteworthy that if the state refuses that responsibility, the committee must be released in any event by the Attorney General. *A fortiori,* commitment of a state habeas prisoner, as here, must necessarily be a state responsibility. We can only consider the question of dangerousness, therefore, if it in some other way relates to the federal court's function in the habeas context.

**B.**

The writ of habeas corpus is concerned with the constitutional fairness of a defendant's trial, and the sole function of the federal court in this context is to determine whether or not a constitutional infirmity infected the defendant's trial. In accordance with the principles cited earlier, once that determination is made and the writ is issued, with or without surety, release presumptively follows. Release may only be challenged, as discussed above, if matters are put in issue relating to a petitioner's ability to respond to federal process, or

which in some other respect relate to the federal interest.

Indeed, former Supreme Court Rule 49, of which Rule 23 is a direct descendant and which governed district court decisions regarding the enlargement of habeas petitioners until the adoption of the Federal Rules of Appellate Procedure in 1967, made release of a prevailing habeas petitioner *mandatory.* It did so even while providing a judge with discretion to set surety. The additional discretion reflected in the language in Rule 23 was only added in 1967, and does not erase the strong presumption in favor of release. Significantly, as noted, even under the former rule, release was mandated despite the availability of surety, indicating to us that the governing federal concern in the habeas context has long been focused upon assuring the appearance of the released prisoner in subsequent federal proceedings. *See Thomas,* 472 F.2d at 742.

Other factors—that is, factors that are not related to the petitioner's response to federal court requirements and that are traditionally state concerns—have no relevance to the federal function in habeas cases. This narrow view of "special reasons" which may be considered by a federal court is consistent with the historically limited role of the federal court in habeas proceedings—that of determining whether or not petitioner's confinement is constitutional.[5] It is also consistent with prior cases that have focused on the federal court's interest in guaranteeing the appear-ance of petitioner for subsequent proceedings or for the petitioner's return to state custody. *See, e.g., LaFrance v. Bohlinger,* 487 F.2d 506, 508 (1st Cir.1973); *Thomas,* 472 F.2d at 743.

It is not that federal courts are oblivious to danger or other reasons which might compel a state court under *its* authorities to commit or hold an individual pending further judicial proceedings. Nor is it that if a "special reason" having federal content were presented that the federal court would be powerless to act. *See* 28 U.S.C. § 1651. It is, rather, that we must interpret Rule 23(d) to be consistent with federalism and comity concerns, and these concerns dictate that, at least in this case, the "special reason" presented, i.e. dangerousness, is one that is peculiarly within the authority of the state to recognize and to act upon.

## II.

Our holding that a federal court reviewing the release of a state habeas petitioner who has prevailed on his constitutional claim should consider only those factors which bear on guaranteeing the future presence of the petitioner does not leave the state without recourse. In those instances where the state is of the view that a petitioner should not, for other compelling reasons, remain at large, it may proceed before the state courts. Since questions of dangerousness *per se* and related

5. Some courts have held that more general "bail" standards may be considered by a court in regard to the release of a prevailing habeas petitioner. *See, e.g., Walberg v. Israel,* 776 F.2d 134, 136 (7th Cir.1985) (likelihood of reconviction); *United States ex rel. Taylor v. Redman,* 500 F.Supp. 453, 459 (D.Del.1980) (dangerousness); *Sellars v. Estelle,* 450 F.Supp. 1262, 1265 (S.D.Tex.1978) (dangerousness). In addition, one of the only cases attempting to give content to the "special reasons" language of Rule 23(d) considered relevant that a petitioner faced retrial on an additional charge of attempted murder of a police officer. *Lewis v. Henderson,* 356 F.2d 105, 106 (6th Cir.1966).

Apart from the fact that the term "bail" in the federal habeas context is a misnomer, *see Thomas,* 472 F.2d at 741, we reject this approach. In the setting of federal habeas review, such factors are simply not relevant. We note that in the analogous context of the federal bail act, *see supra* at 995, specific provision is made for consideration of the dangerousness of the defendant to persons or property. Here, however, in the habeas context, we are provided not with a detailed statutory scheme concerning the disposition of prisoners fully subject to federal authority, but rather a sparsely worded rule governing a narrowly-defined federal role affecting matters of state policy and concerning persons in state custody. We know of no authority that would provide, in effect, a federal common law of detention permitting consideration of a state prisoner's dangerous propensities or other matters of state concern, and no such authority is provided by Rule 23.

issues are traditionally state concerns and since the victorious habeas petitioner generally still faces trial on a state indictment, the appropriate forum before which state authorities may seek relief is the state court with responsibility for pending or future proceedings concerning the underlying indictment.

Indeed, we suggested this possible course of action to the State at oral argument in this matter. Since Carter's position is now no more or less than that of any other state-indicted, not-yet-tried individual, we observed that the State could follow its normal procedures for imposing or denying bail or conditions of release with respect to such individuals. The State, however, questioned this suggestion, insisting that in reviewing the order releasing Carter, we should instead look to our own bail statute, 18 U.S.C. 3141 *et seq.*—which we have already indicated is necessarily inapposite. *See Thomas,* 472 F.2d at 471. The State further argues that, on the authority of *Thomas,* the New Jersey courts would reject any application on the ground that Carter's case is now in the federal courts.

Without purporting to advise the State on how to proceed, we nonetheless think it necessary to clarify a misconception. Nothing in *Thomas* precludes the State from acting on an appropriate application for the commitment of an individual that is made pursuant to appropriate State statutes and procedures, and where proof in satisfaction of those statutes is had. *Thomas* holds only that the federal court may not *order* the State court to accept bail or to fix bail in a particular amount. 472 F.2d at 743. That holding is consistent with the comity considerations we have

previously mentioned. It is also perfectly consistent with the federalism concerns of *Thomas* to hold that the State court may on its *own* volition, take appropriate action in regard to an individual under indictment and to be retried in the court's own jurisdiction.

The State court may not, of course, in the absence of a planned retrial of a petitioner, merely incarcerate him pending the resolution in this court of the State's appeal of the granting of the writ. Such an action would interfere with the federal process and would be based on no State authority other than the state conviction now declared unconstitutional by the federal district court.

Nothing, however, prevents the State from dealing with a habeas releasee who will be retried as the State would deal with any other State prisoner who has yet to stand trial. It is petitioner's *conviction,* not his *indictment,* which has been declared unconstitutional by the federal court. *See* Hart & Wechsler *The Federal Courts and the Federal System* 547 n. 1 (prevailing habeas petitioner in *Michel v. Louisiana,* 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955) released by order of the district court and immediately rearrested by state authorities on same crime).

### III.

■ Thus, as we see it, on this application where the State has expressed no fear that Carter would fail to appear in response to federal process, the State has failed to furnish a ground on which a federal court can or should act to reincarcerate this successful habeas petitioner pending appeal of the granting of the writ.[6]

---

**6.** We do not mean to imply that the arguments presented before this court constitute the only possible grounds for denying enlargement of a prevailing habeas petitioner pending a State's appeal. Any other asserted grounds, however, in order to satisfy the "special reasons" language of Rule 23(d), would have to relate to a federal rather than a state interest.

Moreover, we do not mean to minimize the importance of other State interests militating against the release of persons still facing serious state charges. The State has simply chosen the

wrong forum in which to present an application based on the traditional state concern of dangerousness, and has provided no authority for extending federal power into such an area. Indeed, had the district court in the matter at hand followed the customary approach in issuing a writ only after a 60 or 90 day period for the State to commence new trial proceedings, the State would have had full opportunity before Carter's release from custody to make application to the state court invoking state bail procedures. Such an application, we empha-

The state's motion to vacate release and for a court ordered psychiatric examination therefore is denied.[7]

size, would not have interfered with federal authority in the habeas proceeding, because any continued incarceration of Carter would have been predicated on standards relating to his status as an accused facing a murder indictment and trial—and *not* on a conviction that has been held by a federal court to be unconstitutional.

7. Although Carter's release was ordered on November 8, 1985—and a notice of appeal from both the granting of the writ and the release was filed the same day—the State's motion to vacate the order of release was not received in this court until December 18, 1985. We immediately ordered an answer to be filed by January 2, 1986. We heard expedited oral argument on January 7, 1986, reserving judgment until the filing of the within opinion.

We expressly make no finding and offer no opinion as to the sufficiency of the evidence presented by the State on the question of Carter's putative dangerousness. As we have discussed, this is a matter for the State to address if raised in an appropriate application.