Efrid BROWN and William J. Johnson, Jr., Petitioners, Appellants,

v.

Frank O. GUNTER, etc., Respondent, Appellee.

No. 77–1172.

United States Court of Appeals, First Circuit.

Sept. 13, 1977.

Efrid Brown and William J. Johnson, Jr., on brief pro se.

Francis X. Bellotti, Atty. Gen., Stephen B. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau, Boston, Mass., and Robert V. Greco, Asst. Atty. Gen., Criminal Division, Boston, Mass., on brief for respondent, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge.

COFFIN, Chief Judge.

Appellants, currently serving sentences for first degree murder, are before us appealing the lower court's denial of their petition for writs of habeas corpus. Appellants challenge the constitutionality of a state trial judge's permitting the jury to alter a verdict of not guilty that was delivered in open court.

The jury in this case reported verdicts of not guilty. The court recorded the verdicts and discharged the jury. The jurors left the courtroom. Within minutes one of the jurors reported to a court officer that the verdict was incorrect. The jury had not separated or been in contact with any persons other than the court officers. The judge recalled the jurors. The foreman explained that they had meant to find the defendants not guilty of entering with intent to commit murder, but guilty of murder in the first degree. The court recorded the corrected verdict and again discharged the jury.

After an evidentiary hearing in which the clerk and the court officers testified, the trial judge found that the jury had "remained an undispersed unit, still within the control of the court and in the custody of the court officers, and they were not subject to any judicial or extra-judicial influence before they returned to the court room to announce the true verdicts." *Commonwealth v. Brown*, Mass., 323 N.E.2d 902, 905 (1975).

The Massachusetts Supreme Judicial Court reversed the convictions on appeal due to an error in the trial judge's charge and remanded the case for a new trial. Appellants were again convicted. The Supreme Judicial Court considered and rejected the claims now before us on the theory that the same principle that allows juries to correct formal or clerical errors "applies to deny finality to the original verdicts here, since the jury, by their own action and without any suggestion from the judge or any one else, immediately indicated that the verdicts reported did not state what they had agreed to." *Commonwealth v. Brown, supra*, at 905. State remedies have, therefore, been exhausted.

■ We have no power to challenge the state court's conclusion. We accept the rule it adopted as the correct rule of law in Massachusetts. The only issue properly before us is whether or not this rule is consistent with the requirements of the United States Constitution.[1] We find that it is and, therefore, affirm the denial of the petition.

The Fourteenth Amendment requires that no state "deprive any person of life, liberty, or property, without due process of law." Appellants suggest that by allowing the jury to change its recorded verdict, Massachusetts did deprive them of due process. There is no longer any doubt that the states are bound by the two Bill of Rights provisions relevant here[2]—the Double Jeopardy Clause of the Fifth Amendment[3] and the right to a jury trial guaranteed by the Sixth Amendment.[4]

■ Neither provision has been violated on its face. Appellants did receive a jury trial. The state did not reprosecute them in winning the original conviction, nor did that conviction impose a second punishment for the same criminal activity.[5] The provisions of the Bill of Rights, however, are not empty, meaningless forms. In deciding whether the Constitution permits the rule Massachusetts has adopted in this case,[6] we must go on to inquire whether by permitting operation of that rule we would "grant the right[s] but in reality . . . withhold [their] privilege and enjoyment."[7] We have not found any cases considering the issue raised here: whether the United States Constitution prevents the states from adopting rules allowing a discharged

---

1. For this reason we find inapposite those cases appellants cite that merely adopt a rule of trial procedure without reference to constitutional law. In *People v. Rushin*, 37 Mich. App. 391, 194 N.W.2d 718 (1971), the state court adopted the rule that "[o]nce the jury has been officially discharged and left the courtroom, . . . it is error to recall it in order to alter, amend or impeach a verdict in a criminal case", 194 N.W.2d at 721. It then did go on to say that "[t]o rule that a jury could be recalled after being discharged and leaving the courtroom would . . . offend the policies underlying the double jeopardy clause." On the facts of this case, for the reasons stated herein, we disagree.

2. Appellants explicitly raise only the Double Jeopardy Clause but we choose to interpret their pro se brief generously.

3. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

4. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

5. The appellants' second trial need not concern us here. It resulted from appellants' successful challenge to the judge's charge in the original trial. The Double Jeopardy Clause "imposes no limitations whatever upon the power to *retry* a defendant who has succeeded in getting his first conviction set aside." *North Carolina v. Pearce*, 395 U.S. 711, 720, 89 S.Ct. 2072, 2078, 23 L.Ed.2d 656 (1969). We need examine only the imposition of that original conviction after a not guilty verdict. If the original conviction violated no constitutional guarantee, then the second trial is legitimate. If, on the other hand, the original verdict of not guilty could not be corrected, then it must stand because the government may not retry a defendant who has been found not guilty.

6. It should be obvious from our analysis that while we agree with the district court that a state may determine its procedural rules for itself, it does not follow that the state's choice has any bearing on the constitutionality of the rule chosen.

7. *Mapp v. Ohio*, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961) (holding that the exclusionary rule, though not set out in the Constitution, must be applied against the states in order to secure Fourth Amendment rights).

but still isolated jury to correct its verdict in a criminal case after a verdict has been recorded and the jury has been discharged.

■ The underlying principle of the Double Jeopardy Clause

"is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957), quoted in *Benton v. Maryland*, 395 U.S. 784, 795, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

No such dangers[8] are presented by the rule we are considering. Such dangers are far greater than the mere disappointment that will follow from a defendant having thought for a few moments that he had been found not guilty. Moreover, the defendant's interest is not the only one at stake. We must also consider "the societal interest in punishing one whose guilt is clear after he has obtained [a fair] trial." *United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964). Given that the harm to appellants is minor and that a jury has found them guilty, we conclude that the purposes of the Double Jeopardy Clause have not been undercut.

■ We turn next to the issue whether the Massachusetts procedure in question might undermine the appellants' right to a jury trial. The Sixth Amendment guarantees criminal defendants a right to jury trial so that the government, acting through either judge or prosecutor, cannot participate in the ultimate choice between innocence and guilt. In order to assure the fairness of jury trials, that choice must be the exclusive province of the jury of the defendant's peers. *See generally Duncan v. Louisiana*, 391 U.S. 145, 155–58, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

■ Appellants' jury deliberated and decided upon a verdict of guilty. Through some confusion the verdict was not accurately reported in court. Before the jury came in contact with anyone not admissible to their deliberations, and without any suggestion, prejudicial or otherwise, from any officer of the court, the jury reported the mistake.[9] The trial judge held a hearing and determined that no one had any opportunity to exert improper influence over the jurors and that the changed verdict was not the result of renewed deliberations.

Because no outside influence tainted the corrected verdict we cannot find that entry of the jury's chosen verdict rendered appellants' trial unfair. Moreover, we hold that the trial court's procedures were adequate to determine that the verdict was not tainted.[10] For these reasons we find that the federal Constitution did not bar the entry of the guilty verdict at the original trial.

*Affirmed.*

---

8. Appellants are correct that they are the beneficiaries of a constitutional policy that a trial must end at some point, but that policy of finality is an outgrowth of the same interests underlying the Double Jeopardy Clause. *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

9. We do not here decide what contacts or suggestions would serve to taint the jury's corrected verdict for constitutional purposes. We note in passing that what occurred in this case might not even have been a "discharge" under the standard suggested by the Fourth Circuit in a federal case, *Summers v. United States*, 11 F.2d 583, 586 (4th Cir. 1926) (The jury "may remain undischarged . . . though discharge may have been spoken by the court, if . . . . it remains an undispersed unit, within the control of the court.").

10. We do not intend to suggest that the Constitution requires procedures such as this trial judge followed to guarantee the absence of any taint or that they are the only or best procedures available. In the absence of such procedures in this case, however, we could not have been sure that the jury's verdict in fact was not tainted.