**UNITED STATES of America**

v.

**Wayne S. DAKINS, Appellant.**

**No. 87–3078.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1988.

Decided April 18, 1989.

Dori K. Bernstein (appointed by this court), with whom Steven H. Goldblatt, Washington, D.C., (appointed by this court) was on the brief, for appellant.

Roy T. Englert, Jr., Atty., U.S. Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before STARR and BUCKLEY, Circuit Judges, and THOMAS PENFIELD JACKSON,* U.S. District Judge for the District of Columbia.

Opinion for the court filed by District Judge JACKSON.

JACKSON, District Judge:

Defendant–Appellant Dakins appeals his conviction upon all counts of a three-count indictment charging conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a) and § 846; possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a); and use of a telephone to facilitate those offenses, in

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

violation of 21 U.S.C. § 843(b).[1] The jury was unable to agree as to two co-defendants charged as co-conspirators, and the government subsequently moved to dismiss the charges against them. Dakins raises three principal points on his appeal. Perceiving no reversible error, however, we affirm.

## I.

■ Dakins' defense was entrapment. The informant, he said, a personal friend of his, had induced him to procure cocaine for a "friend" of hers (the undercover officer), making multiple telephone calls to his home to persuade him to do so. In support of his contention that the undercover officer was so unscrupulous as to allow the informant to entice an unwilling subject to engage in a criminal enterprise, Dakins sought to introduce evidence of an altercation between himself and another police officer at the station house shortly after his arrest, witnessed by the undercover officer who did nothing to prevent it.[2] Dakins' testimony would have asserted that the provocation for the other officer's alleged assault upon him was his refusal to give a statement implicating one of his eventual co-defendants, and its relevance, for his purpose, would have been to undermine the credibility of the undercover officer's account of his own encounters with the defendant from which Dakins' predisposition to commit the crimes could be found. The trial judge, Dakins argues here, erred in excluding the evidence as irrelevant.

At least two rules of evidence expressly determine the irrelevance of such evidence as a matter of law. Fed.R.Evid. 404(b) declares that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R. Evid. 608(b) prohibits the use of "extrinsic evidence" of "specific instances of the conduct of a witness" (other than criminal convictions) for the purpose of either supporting or attacking the witness' credibility, and allows them to be raised in cross-examination of the witness, in the discretion of the court, only if probative of the witness' "truthfulness or untruthfulness." Assuming, however, that appellant's tenuous premise, *i.e.*, a police officer's apparent indifference to an act of brutality by another enhances the likelihood of his having countenanced an informant's illegal solicitation of a crime, renders the evidence "relevant" in any sense, Fed.R.Evid. 403 clearly commits to the trial court's discretion the decision to exclude even relevant evidence if its probative value is outweighed by the danger of unfair prejudice, or its tendency to confuse or mislead the jury.

The evidence of the altercation between Dakins and another officer, allegedly observed with indifference by the undercover officer, could have served to prejudice the jury against the police in general. It could also have diverted their attention from the issues relating to appellant's own guilt or innocence. Given the deference we must accord to the trial judge's rulings on the admissibility of evidence generally, *see*, *e.g.*, *United States v. Birney*, 686 F.2d 102, 106 (2nd Cir.1982), we cannot say the trial judge here abused his discretion in declining to receive Dakins' evidence.

## II.

At the trial's conclusion, the jury was instructed, as Fed.R.Crim.P. 31(b) provides, that at any time during its deliberations, it could return a verdict of guilty or not guilty with respect to any defendant or any count. In the early afternoon of the third day of deliberations, July 10, 1987, the jury sent a note to the court which read: "We are stalemated on discussion and vote. We

---

1. The evidence tended to show that a paid informant had introduced an undercover police officer to Dakins as a prospective customer in early 1987, and then had acted as a go-between as the officer and Dakins negotiated several small transactions. The relationship culminated in Dakins' agreement to sell a kilogram of cocaine directly to the officer on March 6, 1987. Dakins was arrested as the sale was about to be consummated.

2. Conceding that an altercation occurred, the government's version would have been that Dakins assaulted the other officer who retaliated in self-defense.

have reached one verdict. Should we still continue?" The trial judge had the jury brought to the courtroom and asked the foreperson if the verdict form had been completed with respect to the one verdict. The foreperson indicated that it had, and handed the form to the marshal, who gave it to the courtroom clerk. The courtroom clerk read the verdict aloud, announcing that the jury had found defendant Dakins guilty on all three counts. Defense counsel requested, and the court ordered, a poll of the jury, in the course of which each juror personally indicated assent to the verdict. The clerk reported the poll complete, and the court then returned the jury to the jury room to continue its deliberations as to the remaining defendants.

Hours later, as the trial judge was excusing the jury for the weekend, Juror No. 10 requested a conference with the court, stating that she had a "question about the decision that was made on Mr. Dakins." After conferring with counsel, the trial judge told her to "write down what is on your mind." She did so, and her note was placed under seal, but never read by the court, who concluded, after extensive consideration with counsel, that he could have no conversation with Juror No. 10 pertaining to the verdict on Dakins. When unsealed for the purpose of this appeal, the note indicated that Juror No. 10 had misgivings as to the sufficiency of the government's proof of Dakins' guilt on the conspiracy count of the indictment.[3]

The jury ultimately was unable to reach a verdict on the remaining two defendants, and on July 14, 1987, it was dismissed. On the same date the three-count guilty verdict returned against defendant Dakins was file-stamped and docketed by the courtroom clerk. The charges against the co-defendants were later dismissed.

■ Appellant suggests several reasons why the trial judge should not have accepted the jury's verdict. First, he submits that the court erred in accepting the jury's partial verdict without first having special-

ly instructed the jury as to a partial verdict's finality. We believe no special instruction to have been necessary, however. Fed.R.Crim.P. 31(b) expressly permits the jury to return a verdict "with respect to a defendant or defendants as to whom it has agreed." It says nothing to suggest that such a verdict, once recorded, is open to reconsideration, and the case law is to the contrary. *See, e.g., United States v. Hockridge*, 573 F.2d 752, 759 (2nd Cir.), *cert. denied*, 439 U.S. 821, 99 S.Ct. 85, 86, 58 L.Ed.2d 112 (1978).

Appellant cites none, and we are aware of no precedent requiring a special finality instruction. Indeed, it is not even required that the jury be instructed about its right to return a partial verdict at all. *See, United States v. DiLapi*, 651 F.2d 140 (2d Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1427, 1428, 71 L.Ed.2d 648 (1982). The trial record here makes clear that the jury sent the note indicating that it had "reached one verdict" on its own initiative. That verdict was then entered on a verdict form, announced by the foreperson in open court, and orally confirmed by each and every juror—the same solemn formalities that attend a verdict which ends an entire case. We find no reason for the jury to have thought its partial verdict any less final than it would have been had the jury been rendering a verdict as to all of the defendants.

■ Appellant next contends that since the jury's verdict was not file-stamped nor docketed until July 14, 1987, Juror No. 10's repudiation before that date rendered the verdict non-unanimous, and therefore invalid. Appellant relies on Fed.R.Crim.P. 31(d), which states:

> When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

---

**3.** By stipulation the sealed note became part of the record on appeal, and was ordered unsealed

by this court.

To bring his case within the ambit of the rule, appellant first asserts that Juror No. 10's delayed repudiation was "functionally identical to a dissent registered on polling." He then observes that the courtroom clerk did not file-stamp the verdict form and docket the verdict until all courtroom proceedings had been completed, and, thus, asserts that the verdict had not, until then, been "recorded."

Appellant is wrong in both respects, and to adopt his construction of Rule 31(d) would jeopardize both the integrity of the jury deliberation process and the finality of jury decisions once reached. First, Juror No. 10's repudiation is simply not the functional equivalent of dissent upon polling. She had, in fact, assented when polled. Juror No. 10's second-thoughts were manifested hours after the poll had been conducted, and the jury had been returned to its deliberations by the court. The verdict had been read into the court record. Upon the 12th juror's assent, also upon the record, it was "recorded" for purposes of Rule 31(d). The jury's decision had become a final verdict, and no juror could thereafter be allowed to impeach it. Fed.R. Evid. 606(b) prohibits jurors from giving evidence about any matter pertaining to their verdicts except extrajudicial influences. Juror No. 10's unsealed note revealed that her misgivings derived from her post-verdict reflections about the weight of the government's proof at trial, and not from an extrajudicial influence.

The time at which the courtroom clerk attended to the strictly clerical task of file-stamping the verdict form and docketing the verdict is immaterial. Indeed, had the jury been required to continue to deliberate on Dakins' co-defendants, or had the clerk been absent or fallen behind in his paperwork, it might have been weeks before the Dakins verdict was entered in the court jacket, but the verdict would not have been any the less "recorded," nor any less final. A verdict becomes immutable by the jury once announced in open court, or when it has been confirmed by a poll, if ordered. Thus, under both Fed.R.Crim.P. 31(d) and Fed.R.Evid. 606(b), the trial judge correctly refused to accept Juror No. 10's attempted repudiation.

## III.

Finally, appellant urges that a "rule of consistency" be applied to his case. The rule of consistency is an exception, observed by a limited number of courts, to the general rule that courts should allow seemingly inconsistent verdicts to stand. It is a rule peculiar to conspiracy cases, and its effect is to mandate acquittal of *all* co-defendants tried together in a conspiracy case where the jury acquits all but one. *See, e.g., United States v. Sachs,* 801 F.2d 839 (6th Cir.1986). The rationale behind the rule is that conspiracy, by definition, cannot be committed by one acting alone.

Dakins' co-defendants were not, however, acquitted; the charges against them were dismissed. Even courts that follow the rule of consistency recognize that "if charges are dismissed against all other coconspirators ... dismissal of charges against the remaining conspirator is not required." *United States v. Sachs,* 801 F.2d at 845. Moreover, the charges against Dakins' co-defendants were dismissed because the jury could not reach a verdict. When faced with this precise problem in *United States v. Sangmeister,* 685 F.2d 1124, 1127 (9th Cir.1982), the court observed that "[a]s the hung jury is the failure of the jury to reach a verdict as to the coconspirator, we are not faced with inconsistent verdicts." We agree. Given the lack of verdict on Dakins' codefendants, there stands no verdict with which the Dakins verdict could be said to be inconsistent.

Finally, even if Dakins' conviction could be deemed an "inconsistent verdict," this jurisdiction has not adopted the rule of consistency, and we decline to do so today. We interpret *United States v. Powell,* 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), if not to preclude such a rule, at least to cast doubt upon it. In *Powell,* the Supreme Court refused to vacate a verdict convicting a defendant of facilitating a conspiracy, even though the defendant had been acquitted of the underlying conspir-

acy charge by the same jury. Being the most recent Supreme Court pronouncement on the matter of inconsistent verdicts, *Powell* and its precursor, *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), make clear that "where truly inconsistent verdicts have been reached, [t]he most that can be said ... is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Powell*, 469 U.S. at 64–65, 105 S.Ct. at 476, citing *Dunn*, 284 U.S. at 393, 52 S.Ct. at 190.

In short, Dakins' conviction is not "inconsistent" with the freedom of his co-defendants, whether the co-defendants were released by an acquittal or, as in this case, by a dismissal of the charges against them.

The conviction is affirmed.