**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gerard J. MARINARI, Defendant–Appellant.**

**No. 93–2096.**

United States Court of Appeals, Seventh Circuit.

Argued March 29, 1994.

Decided August 23, 1994.

Thomas Edward Leggans, Office of U.S. Atty., Crim. Div., Fairview Heights, IL (argued), Michael C. Carr, Asst. U.S. Atty., Benton, IL, for plaintiff-appellee.

Jeffrey E. Stone (argued), David J. Stetler, McDermott, Will & Emery, Chicago, IL, for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

When does a request to poll a jury come too late? That is the issue presented in this case. Nine days were devoted to the trial of Gerard J. Marinari. The jury deliberations took sixteen hours over two days. The consideration of the case by the jury was difficult. Three declarations of deadlock occurred and frustration was evident. The jury ultimately found Marinari guilty of the one count of criminal conspiracy to distribute marijuana with which he was charged. All jurors signed the verdict form. No oral poll of the jury was taken, however, notwithstanding the request for one made by Marinari's counsel after the jury had retired from the courtroom—but while it remained intact in the jury room.

## BACKGROUND

In greater detail, the situation was as follows. At 4:30 P.M., on January 19, 1993, the jury began their deliberations which continued for approximately five hours, interrupted by dinner. During this time, the jury made several requests for transcripts of the testimony of various witnesses and clarification of certain instructions. After conferring with counsel, the court provided written responses to the jury including advising them that no

transcripts were then available. Shortly after 9:30 P.M., the jury indicated by a note to the court that "the jury is at a deadlock and have been for the past three hours. The minority have stated that they cannot change their minds in good conscience." Without objection of counsel the jury was advised by a note from the judge stating: "I'm adjourning court for the evening, and ask that you resume your deliberations tomorrow morning at 9:30 a.m."

The following day the jury reconvened at 9:30 A.M., as directed. More notes passed back and forth between the jury and the court concerning the previously requested transcripts of witness testimony. At 12:12 P.M., the jury delivered another note again requesting the transcripts and inquiring when they would be prepared. The note indicated that the transcripts were "extremely important" and if they were not available the jury wanted to meet with the judge to receive guidance on how they should proceed. After a discussion with counsel, the court notified the jury in writing that it would be an hour before the transcripts could be completed. There is no indication in the record when the transcripts were actually delivered to the jury. At 3:16 P.M., the jury sent a note to the court stating they had not come any closer to reaching a decision and that "it appears that we are not going to be able to reach a unanimous decision without someone compromising their sworn oath." This note raised the concern of the court and counsel. They then discussed several options, from declaring a mistrial to regiving (in isolation) the *Silvern*[1] instruction or "dynamite charge."

Marinari moved for a mistrial on the basis of the jury's note. Counsel for the government, when asked by the court for the government's position, indicated that there was no objection to the motion for mistrial. Government counsel, however, agreed with the court's suggestion that before granting a mistrial an inquiry should be made about the jury's ability to reach a decision. The jury was returned into court at 4:30 P.M. When asked by the judge whether it would do any good to continue the deliberations, the foreman responded, "I'm not certain that it would." He then indicated how difficult it was to apply the law to the evidence presented. The foreman concluded by saying that "I think I speak for all these people here saying this is probably the hardest thing I've ever had to do. I'm going to get emotional now." After acknowledging that it was an emotional situation not only for the jury, but also for the parties and the court, the judge told them to continue their deliberations and gave the *Silvern* instruction. Thereafter, the jury resumed their deliberations.

At 5:18 P.M., the jury requested a transcript of the testimony of yet another witness. The jury also requested the time frame within which they might expect the transcript. The court responded that it could not be made available until the following morning. Shortly thereafter, the court security officer reported sounds coming from the jury room which indicated that some jurors had become highly agitated. The court then raised again the possibility of declaring a mistrial while expressing concern about how things had deteriorated in the jury room. The court wondered whether the jury could be "rehabilitated." The government objected to declaring a mistrial and the jury was called back into court at 7:25 P.M.

The court explained that transcript preparation was taking a long time because both the judge and court reporter had been involved in other cases throughout the day. When asked if the jury would feel better if they had dinner, the foreman responded, "Probably not. Probably worse." The judge suggested that perhaps the jury should "go home for the evening" and "come back tomorrow" when the transcript they wanted would be ready. The foreman declined and stated: "I don't know the answer, Your Honor. We've sat in there for a day and a half now, beat our heads against the wall, and I don't think we know where to turn from here." The court made a few comments of encouragement and the foreman responded, "I don't think anyone here wants to come back tomorrow. Why don't you just let us go back, and we will see if we can hammer something else (sic)."

---

1. *See United States v. Silvern,* 484 F.2d 879 (7th Cir.1973).

The jury resumed its deliberations and returned a verdict fifty-five minutes later at 8:20 P.M. The verdict of guilty, signed individually by each juror, was read into the record by the courtroom deputy clerk. The jury was thanked by the judge and told to "go back to the jury room." After the last juror had exited the courtroom, Marinari requested that the jury be polled. The request was denied while the jurors remained in the jury room waiting to be escorted by the court security officers to the parking lot.

Marinari filed a motion for a new trial, claiming among other things that the court had committed error in refusing to have the jury return to the courtroom to be polled. The motion for new trial was denied. Marinari appeals, and asks us to reverse and remand for a new trial.

### DISCUSSION

### POLL OF JURY AS A MATTER OF RIGHT

Marinari correctly claims that he had a right to a poll of the jury based on Federal Rule of Criminal Procedure 31(d), which provides:

> [w]hen a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

Our long-standing position has been that upon a timely request a defendant has an absolute right to poll the jury to ensure the unanimity of the verdict against him. *United States v. F.J. Vollmer & Co.*, 1 F.3d 1511, 1522 (7th Cir.1993) (quoting *Mackett v. United States*, 90 F.2d 462, 466 (7th Cir.1937)). In *Vollmer* we also noted that the right to poll a jury is a substantial right and that a "[f]ailure to poll the jury upon a timely request is *per se* error requiring reversal." 1 F.3d at 1522.

In applying Rule 31(d) our cases have consistently held that after the announcement of the verdict, the parties must be afforded "a reasonable amount of time to make the request" for a poll before the verdict is record-ed. *United States v. Randle*, 966 F.2d 1209, 1214 (7th Cir.1992); *United States v. Shepherd*, 576 F.2d 719, 724 (7th Cir.), *cert. denied*, 439 U.S. 852 (1978); *United States v. Marr*, 428 F.2d 614, 615 (7th Cir.1970).

We stated in *Shepherd* that "the purpose of affording a right to have the jury polled is not to invite each juror to reconsider his decision, but to permit an inquiry as to whether the verdict is in truth "unanimous" and "uncoerced," and that each juror has "fully assented." 576 F.2d at 725.

Our first task then is to determine whether the verdict form in this case, signed by each of the individual jurors, constituted a valid poll under Rule 31(d).

### INDIVIDUALLY SIGNED VERDICT FORM NOT A POLL

In the immediacy of the post verdict argument, the district court concluded (later modified in his written memorandum) that the jury had been polled, because they had each signed the verdict form and that was "a form of a poll." It is true that Rule 31(d) does not prescribe how the poll of a jury is to be conducted, and leaves the method to the discretion of the district judge. However, one form of polling has been found to be inadequate. In *Government of Virgin Islands v. Hercules*, 875 F.2d 414, 418–19 (3d Cir.1989), the Third Circuit held that the reliance on verdict forms signed by all jurors in the jury room was inadequate to meet the polling requirements of Rule 31(d). The method of polling chosen must satisfy the purpose of the poll, which is to ensure "uncoerced unanimity." *Id.* at 418 (citing *Shepherd*, 576 F.2d at 725). Ensuring "uncoerced unanimity" is properly satisfied by asking each juror individually in open court to answer the question of whether or not the verdict announced was that juror's verdict.

In *Shepherd*, we indicated only a preference for this method. *Id.* at 722, n. 1. However, we intend to leave no doubt now that each juror's signature on a verdict form—standing alone—cannot substitute for an oral poll of the jury in open court. This is so because the signing of the verdict form in the jury room does not demonstrate uncoerced unanimity, which is the purpose of

Rule 31(d). As a result, the action taken in this case with regard to the jurors' signatures on the verdict form was not a poll contemplated by Rule 31(d). Having determined that no valid poll was taken, we turn to whether Marinari preserved his right to a poll under Rule 31(d) by making a timely request.

## REQUEST FOR POLL MUST BE BEFORE VERDICT IS "RECORDED"

As an additional ground for denying a poll of the jury, the district judge determined that Marinari failed to timely exercise that right. The relevant portion of the transcript reads as follows:

> (The proceedings resume in open court with all attorneys and the defendant present, in the presence of the jury at 8:20 P.M.)
>
> THE COURT: Mr. Schulte [Jury Foreman], I've been told you've reached a verdict.
>
> MR. SCHULTE: Yes, we have.
>
> THE COURT: Would you give it to Mr. Jones to give it to me? Vicki, would you read the verdict, please?
>
> THE CLERK: Yes. The jury find the Defendant Gerard J. Marinari guilty of the offense charged in the indictment. This verdict is signed by the foreperson and the remaining jurors.
>
> THE COURT: Members of the jury, I want to thank you ladies and gentlemen for your service to the Court, for your being here when the Court's asked you, for your patience, your diligence in listening to this case. I have other matters to take up here now, and I'll ask that you go back to the jury room.
>
> (The Jury Exits the Courtroom)
>
> MR. FAHRENKAMP: [Marinari's attorney] Could we have a poll of the Jury?

The district court denied the request after hearing argument of counsel. During the argument and ruling which took place in the courtroom, the jury remained together isolated in the jury room still under the control of the court.

Rule 31(d) explicitly provides that the request for a poll of the jury must be made after "a verdict is returned and before it is recorded." But when a verdict is "recorded" is left undefined by Rule 31(d). As was apparent in the discourse in the trial court, this omission in the Rule has resulted in understandable confusion.

With regard to Rule 31(d), we know that ministerial acts dealing with the processing of the verdict have been determined to be inapplicable. Thus, the action of the courtroom deputy clerk "file stamping the verdict form and docketing the verdict is immaterial" to the question of when a verdict is "recorded." *United States v. Dakins*, 872 F.2d 1061, 1065 (D.C.Cir.1989). Hinging the "recording" of the verdict on these acts would create very difficult problems. The entry of the verdict on the docket typically occurs one or more days after the verdict is announced. In this case, for example, the verdict was entered on the docket the following day. Under such circumstances jurors will have been subjected to exposure of outside factors rendering the reliability of any poll on recall problematic. On the other hand, the timing of the file stamping of a verdict form is not consistent and may occur nearly contemporaneously with the announcement of a verdict. It could, therefore, be nearly impossible to request a poll of the jury between the verdict's announcement and the file stamping of the verdict.

## FINALITY OF VERDICT AND "RECORDING"

Appellate decisions addressing the issue of "recording" have looked to the finality of the verdict. The recording of a verdict is initiated when it is read into the court record, but that does not render it final. Finality, and thus recording, requires the occurrence of a terminating event.

■ Where a poll is taken, the verdict becomes final and "recorded," when the twelfth juror's assent to that verdict is made on the record. *Id.* On the other hand, where no poll is requested or taken the verdict becomes final and unalterable and is therefore "recorded" when the jury has dispersed, completing its discharge. *See, e.g., Commonwealth v. Pacini*, 224 Pa.Super. 497, 307 A.2d 346, 348 (1973).

Until the jury is actually discharged by separating or dispersing (not merely being declared discharged), the verdict remains subject to review. *Putnam Resources v. Pateman,* 958 F.2d 448, 459 (1st Cir.1992). When a jury remains as an undispersed unit within the control of the court and with no opportunity to mingle with or discuss the case with others, it is undischarged and may be recalled. *Summers v. United States,* 11 F.2d 583, 586 (4th Cir.), *cert. denied,* 271 U.S. 681, 46 S.Ct. 632, 70 L.Ed. 1149 (1926). As a result, the verdict is not final or "recorded" as that term is used in Rule 31(d).

The "recording" dilemma was avoided in the American Bar Association's recommended rule of criminal procedure, dealing with polling the jury. The model rule uses the actual occurrence of finality of the verdict described in the case law and thus provides for a right to a poll "[w]hen a verdict has been returned and *before the jury has dispersed....*" *ABA Standard for Criminal Justice* 15–4.5 (2nd ed. 1980 & Supp.1986) (emphasis added).

There is a long line of cases which demonstrate the practical reason why finality of the verdict comes upon the separation and dispersal of the jurors. It is from that time that the jurors are exposed to outside contacts. *E.g., Summers,* 11 F.2d at 586 (finality of verdict occurs when jury is discharged and has separated); *People v. McNeeley,* 216 Ill.App.3d 647, 159 Ill.Dec. 119, 122, 575 N.E.2d 926, 929 (1991) (pivotal question for finality is whether "protective shield" was removed by discharge, "allowing the jurors to be influenced by improper outside factors"); *Joy v. State,* 14 Ind. 139, 142 (1860) (right to poll jury passed when "the jury were permitted to separate"). Of course, after discharge, the jurors are quite properly free to discuss the case with whomever they choose. Simple questions such as "Did we do alright?" or "We did the right thing, didn't we?"—responded to either positively or negatively would taint any subsequent poll. In

any realistic sense, no meaningful poll, unaffected by outside influences, could be conducted at this point. Thus, in the absence of a poll, it is upon separation and dispersal of the jury that the verdict, initially read into the record, becomes final and unalterable and is therefore "recorded" for the purpose of Rule 31(d).

## REASONABLE TIME FOR POLL REQUEST BEFORE VERDICT RECORDED

■ Having resolved the uncertainty concerning Rule 31(d) "recording," the answer to whether Marinari's request for a poll was timely becomes plain. Yet, before announcing that conclusion, we believe it would be helpful to examine and comment on Marinari's claim that his "first opportunity" to request a poll of the jury occurred only after the jury had left the courtroom. The district judge, to the contrary, concluded that Marinari had an opportunity to make a request for a poll between the conclusion of the reading of the verdict and the judge's remarks to the jury. The judge acknowledged that this amounted to only a brief period of time, described as "a little pause" of "several seconds." Counsel for Marinari did not take advantage of whatever brief transition there may have been between the announcement of the verdict and the district judge's concluding remarks to the jury to make his request for a poll. In *United States v. Randle,* 966 F.2d 1209, 1213–14 (7th Cir.1992), we found that 1.5 seconds (there was an audio tape of the proceedings) which elapsed after the announcement of the verdict was an unreasonably short time frame within which counsel should be expected to request a poll of the jury or suffer waiver of that right. The brief pause here was likewise insufficient. Of course, the district judge later acknowledged in his written memorandum, that the better practice, as we noted in *Randle,* is to ask counsel at this point if there are any requests to poll the jury.[2] The error here was not critical, however, because additional time

---

2. It is also worth observing that in some district courts in this circuit there is a standard practice of polling every jury in a criminal case immediately following the return of a verdict. This, of course, has avoided such problems as we face in this case. A few additional minutes routinely used to establish the fact of the unanimity of a verdict provides a practical alternative to disputes which arise concerning what is a "reasonable" amount of time within which counsel should request a jury poll. There is much to recommend this procedure.

would elapse before the verdict was "recorded."

■ Following that short pause, the court began addressing the jury. Marinari's counsel indicated that he had assumed that the court (apparently on its own motion) would poll the jury after the verdict was read, and when it did not, he did not wish to interrupt the court's closing comments. The general rule in this circumstance is that counsel's decision not to interrupt the court when it was speaking is not to be held against him. In *United States v. Shepherd*, 576 F.2d 719, 723 (7th Cir.1978), we held that counsel, by refraining from interrupting the district judge when he was speaking did not thereby waive defendant's right to a poll. That rule applies in this case as well.

Next, there was what is typically the final "window of opportunity" for counsel to make a request for a poll. This is a time frame which routinely occurs in any criminal jury trial. After the judge thanked the jury and excused them the jurors began leaving the jury box one row at a time and exited the courtroom. Common experience teaches that the length of time necessary for twelve jurors to depart "single file" provides a reasonable opportunity for counsel finally to rise to his feet and announce a request for a jury poll. Counsel risks waiver of the defendant's right to a poll by merely waiting and watching as the jury disappears behind the closed door of the jury room. *See, e.g., Marr*, 428 F.2d at 615 (no request for poll or recall of jury occurred and right to poll waived); *United States v. Beldin*, 737 F.2d 450, 455 (5th Cir.1984) (failure to object to discharge of jury or request that jury be recalled constituted waiver of right to poll). The opportunity to exercise the defendant's right to a poll of the jury was slipping away—and it would have, but for the particular circumstances of this case. The completion of the discharge of the jury, with its dispersal and exposure to outside contact, often occurs quickly after it retires from the courtroom.

### CONCLUSION

■ In this case, however, while the colloquy regarding Marinari's request to recall the jury for a poll was taking place in the courtroom, the jury remained sequestered in the jury room awaiting a security escort to the parking lot. The jurors had not dispersed and they remained untainted by any outside contact. During that time, the jury continued to exist as a judicial body under the control of the court. As a result, the verdict was not yet final or "recorded." The jury, under the somewhat unusual factual circumstances of this case, was available to be recalled and polled. *See, e.g., Putnam Resources*, 958 F.2d at 459; *Brown v. Gunter*, 562 F.2d 122, 125 (1st Cir.1977).

Although Marinari's counsel let pass what is typically the last opportunity for a poll request, no waiver of that right occurred. The delayed request for a poll was timely because it came prior to the separation of the jury and thus before the verdict was "recorded." Given the defendant's absolute right to a poll of the jury at the time it was requested, it was error *per se* for the district court not to recall the jury and conduct an oral poll.

This case is REVERSED and REMANDED for a new trial.