[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: JURY VERDICT
The parties are before the Court on alternate motions regarding the initial and corrected special verdict form made by the jury at the penalty phase in the matter of State of Connecticut v. Ivo Colon.[1] The Defendant requested that the Court impose a sentence of life imprisonment without the possibility of release, in accordance with the jury's CT Page 15581 findings on the initial special verdict form that the aggravating factors did not outweigh the mitigating factor (s). The State requested that the Court impose a sentence of death in accordance with the jury's findings on the corrected special verdict form that the aggravating factor did outweigh the mitigating factor (s)
The Court also has incorporated the findings of the Presiding Criminal Judge (Damiani, J.) made during an evidentiary hearing conducted on December 1, 2000 regarding alleged juror misconduct and the trial court's contact with the jury. An oral decision was issued by this Court on December 5, 2000, and the following represents the corresponding Memorandum of Decision.
 I Facts
On October 16, 2000, after approximately two and one-half (2 1/2) days of deliberation during the penalty phase of the trial, the Court received a communication from the jury. The communication indicated that the jury had reached a verdict and was subsequently marked as Court's Exhibit #29. The Court reconvened and the clerk inquired of the jury their findings from the special verdict form. The jury initially reported chat they unanimously agreed: (1) that the State had proved the aggravating factor beyond a reasonable doubt (yes); (2) chat the Defendant had not proved, by a preponderance of the evidence, the existence of one or a combination of statutory factors (no); (3) that a juror (s) had found the existence of a mitigating factor as defined (yes); and, (4) that the aggravating factor had not outweighed the mitigating factor (s) found (no). Neither party moved for a jury poll. The initial special verdict was accepted and recorded. The jury was excused, and went to the deliberation room.
Immediately upon exiting the courtroom, the jury, through a juror, informed the sheriff that there was a problem.[2] The jury was in its deliberation room at this time, together as a group, and not with any outside parties. The sheriff informed the Court that the jury had a problem and the Court proceeded to the jury room to inquire of the problem. The Court was immediately informed that the problem was with the verdict. The Court briefly responded to the inquiry and instructed the clerk, who was present, to inform the jurors to write a note indicating the specific problem. The jurors produced a note for the Court, which was received and later marked as Court's Exhibit #30.[3] The Court alerted the parties to the jury's problem and conducted discussions with the attorneys in chambers on how to appropriately address the issue. The Court determined that a complete record with the jury had to be CT Page 15582 established for appellate review.
The Court reconvened, the jury's note was marked as Court's Exhibit #30, and each party was allowed to argue its position regarding the additional proceedings.[4]
Subsequently, a jury poll was taken and each individual juror indicated that their intent was to announce that the aggravating factor outweighed the mitigating factor(s). Each individual juror also indicated that the decision concerning their corrected verdict was not a result of any force, threat, or outside influence.[5] At the conclusion of these questions, the Court instructed the jurors to complete another special verdict form which indicated their intended findings.[6] The Court recessed for this purpose. The Court reconvened after the jury had completed the corrected special verdict form, and, before accepting this corrected special verdict form, the Court again had the clerk question each individual juror if this verdict accurately indicated the decision of each juror.[7] The jurors were polled as to this corrected second special verdict form. Each juror acknowledged that this corrected second special verdict form was their actual intent.
The jury was excused. During subsequent hearings in the matter, the Defendant's attorney filed his affidavit containing an allegation of judicial contact with the jury. Because of this allegation, the Court referred the matter for review by the Presiding Criminal Judge, Damiani, J. (Presiding Judge). The Presiding Judge conducted an evidentiary hearing on December 1, 2000, and questioned each of the twelve jurors concerning their contact with the Court. After the hearing, the Presiding Judge ruled that any contact between the Court and the jurors was proven harmless beyond a reasonable doubt.[8]
 II Acceptance of Verdict
The Defendant argued that the Court was bound to enforce the initial special verdict form and therefore must impose a life sentence. In support of this claim, the Defendant argued that the jury's initial findings were accepted and recorded.
The Court must consider the acceptance and recording of the verdict based on the jury's initial appearance in Court and whether or not this initial finding precluded the Court from conducting further proceedings and accepting the jury's corrected findings. The Court acknowledges that it accepted and recorded the initial special verdict form. CT Page 15583
The Court recognizes Practice Book § 42-30, which indicates that judicial authority shall, if the jury verdict is in order and is technically correct, accept it without comment. "The recording of a verdict is initiated when it is read into the court record, but that does not render it final. Finality, and thus recording, requires the occurrence of a terminating event. When a poll is taken, the verdict becomes final and recorded, when the twelfth juror's assent to that verdict is made on the record. . . . On the other hand where no poll is requested or taken the verdict becomes final and unalterable and is therefore recorded when the jury has dispersed, completing its discharge. . . ." (Citations omitted; internal quotation marks omitted.)United States v. Marinari, 32 F.3d 1209, 1213 (7th Cir. 1994) Neither was present in the case before the Court. There was no poll taken initially and there was no dispersement of the jury.
The Connecticut Supreme Court established guidelines for determining when a jury is discharged and ineligible to return to court. "[A] jury cannot be considered discharged so long as its members have yet to fulfill an outstanding obligation pursuant to their status as jurors."State v. Pare, 253 Conn. 611, 628, 755 A.2d 180 (2000). "Pare" stands for the proposition that mere departure from the courtroom does not, in and of itself, discharge a jury from its obligation to render continued service in a particular case." State v. Murray, 254 Conn. 472, 495,757 A.2d 578 (2000).
The Court, in Pare, discussed the status of a jury in determining the term "discharge", cited within Connecticut Practice Book § 42-31.State v. Pare, supra, 253 Conn. 629. In Pare, the Court held that members of the jury are not necessarily relieved of their official obligations after they have departed from the courtroom and therefore, under certain circumstances, may be recalled for the purpose of submitting to a jury poll. Id. The Court concluded in Pare that a jury completes its task, and thereby relinquishes its status as a judicial body, upon the separation and dispersal of its individual members. Id., 629-634, citing UnitedStates v. Marinari, 32 F.3d 1209, 1215 (7th Cir. 1994). At the point where jurors have left the courthouse, and separated and dispersed, individual jurors may come into contact with outside influences, thereby tarnishing the deliberations that may take place thereafter. State v.Pare, supra; 632-33; see also, United Scares v. Marinari, supra, 32 F.3d 1214; Webber v. State, 652 S.W.2d 781, 782 (Tex.Crim.App. 1983);Brown v. Gunter, 562 F.2d 122, 123 (1st Cir. 1977).
When a jury has not separated or dispersed, it remains under the authority of the court. State v. Pare, supra, 253 Conn. 629. The Defendant argued that a jury may only be recalled for the purpose of polling, and that, in the instant case, the jury was not recalled for the CT Page 15584 purpose of polling. Practice Book § 42-31 permits that "[a]fter a verdict has been returned and before the jury have been discharged, the jury shall be polled at the request of any party or upon the judicial authority's own motion." The Court, based upon the jury's request in Exhibit #30, recalled the jury for the purpose of ascertaining whether the finding that had previously been read into the record reflected the true intent of the jury.[9]
The jury remained as an intact unit under the control and supervision of the Court. The legal authority established in State v. Pare, supra,253 Conn. 611, and State v. Murray, supra, 254 Conn. 472, and, consistent with the applicable Connecticut Practice Book sections, caused this Court to find that the jury was not discharged for the purposes of a true verdict. Discharge requires a dispersing of the jury into the community with an opportunity to mingle with or discuss the case with others. The jury remained an undispersed unit, and any contact that took place was initiated by the jury and was for the sole purpose of alerting the Court to its error. The only individuals who had any contact with the jury were court personnel, not anyone from the public. The jury never left the court building, in fact, never left the jury room once it had exited the courtroom.
The Court finds that the act of accepting and recording the initial finding did not preclude the Court from recalling the non-dispersed jury to determine their true findings.
 III Jury Contact
The Defendant next claimed that there was evidence of jury misconduct, and requested an evidentiary hearing.
When a jury is alleged to have based Its ultimate determination on more than the evidence presented at trial, due process requires that the court delve beyond the surface of the allegations in order to determine whether any impropriety permeated and infected the jury's deliberative process.State v. Brown, 235 Conn. 502, 526, 668 A.2d 1288 (1995); See also, Smithv. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The extent and scope of that inquiry remain within the discretion of the court. State v. Brown, supra, 526.
On October 16, 2000, the Court questioned each juror regarding any threats, force or outside influence. Each responded that none had occurred from the time they reported their initial findings, alerted the Court to the problem, and reported their corrected findings. CT Page 15585
The Defendant also claimed that the trial court's contact with the jury was improper.
The Court acknowledged in chambers to the attorneys and on the record that contact had occurred between the court, the sheriff and a juror(s).[10]
Pursuant to relevant case law, the burden was on the State to show that the contact was harmless beyond a reasonable doubt. Aillon v. State,168 Conn. 541, 548, 363 A.2d 49 (1975), citing Chapman v. California,386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, reh. denied, 386 U.S. 987,87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); State v. Rodriguez, 210 Conn. 315,326, 554 A.2d 1080 (1989).
The Court addressed this issue on October 16, 2000, however, in an attempt for completeness, it referred the entire issue of juror contact to the Presiding Judge, sua sponte, for his determination and evidentiary hearing.
The Presiding Judge conducted a preliminary hearing on November 29, 2000, and an evidentiary hearing on December 1, 2000. The Presiding Judge's ruling has been incorporated herein. His ruling was that the State had sustained its burden of proof beyond a reasonable doubt, and that any contact was harmless. Therefore, any claims of inappropriate contact have been fully explored and have been ruled upon by an independent judge in accordance with existing case law.[11]
 IV Ability of Jury to Correct Verdict
Insuring that a verdict correctly reflects the true intent of the jury is fundamental to the operation of the criminal justice system and the defendant's right to receive a fair trial by an impartial jury. Jury polls are permitted to help insure that a verdict correctly reflects the jury's intent. See, State v. Pare, supra, 253 Conn. 623 (holding that "[t]he right to poll the jury, although not of constitutional dimension, is nonetheless a corollary to the defendant's right to a unanimous verdict.") See also, United State v. Stauffer, 922 F.2d 508, 514 (9th
Cir. 1990); Brown v. Gunter, 562 F.2d 122, 124-5 (1st Cir. 1977).
"[N]o possible unfairness can be found in a judgment that reflects the jury's true intent." United States v. Stauffer, supra, 922 F.2d 514. It cannot be said that allowing a jury to correct a verdict renders a defendant's trial unfair, especially when "no outside influence tainted CT Page 15586 the corrected verdict." Brown v. Gunter, supra, 562 F.2d 125.
The true intent of the jury in the instant case was a finding that the aggravating factor outweighed the mitigating factor (s) and that the Defendant should receive a sentence of death.[12] The jury's true intent was evidenced by the quick turnaround time between the announcement of the initial special verdict form and the jury's notification that there had been an error in that form.[13] It is further evidenced by the foreman's assertion on the record that the jury meant to find death, the jury's assurance that no outside source had influenced its decision, and the jury's responses in each question of its corrected special verdict form.[14] This intent remained consistent in the responses of each juror during the evidentiary hearing conducted on December 1, 2000 by Damiani, J.
Maintaining the integrity of the jury system and insuring that the verdict that is accepted by a Court is one that reflects the jury's true intent is a duty to be diligently performed by the court. See State v.Rodriguez, supra, 210 Conn. 328-29. Therefore, the Court allowed the jury to correct its findings.
It is the finding of this Court that fairness and justice would not allow a scrivener's error to thwart a true and accurate jury verdict.
 V Statutory Scheme of Penalty Phase Hearing
General Statutes § 53a-46a establishes the procedure for a penalty phase hearing of a capital felony case. The statute requires that the determination of penalty must be made by either a jury.of twelve (12) or a three-judge panel. If this Court were to proceed in ignoring the jury's corrected and intended special verdict findings, in essence, it would allow a single superior court judge to substitute his or her judgment for twelve (12) independent fact finders. This would undermine the legislative intent and the existing law, which requires factual decisions in a capital felony case to be made by a jury of twelve (12) or a three-judge panel.
 VI Conclusion
The goal of justice is to afford all litigants a fair hearing. From the record established through this Court and the Presiding Judge, it is clear that the jury immediately recognized its error on the special CT Page 15587 verdict form and sought to correct it. This Court cannot trivialize the jury's intended result, which it reached after careful deliberations, and-finds no basis in the law as it exists today to set aside their intended result.
Based on this Court's finding that it was the absolute intention of this jury to find the aggravating factor outweighed the mitigating factor(s), and this factual finding was not inconsistent with the weight of the evidence, this Court held on December 5, 2000 that as a matter of law it would be an abuse of discretion to set aside the jury's intended verdict.
The motion for an imposition of a life sentence, having been carefully considered by the Court, was denied on December 5, 2000.
THEREFORE:
In accordance with this Court's ruling, the initial special verdict form recorded is vacated and was vacated on December 5, 2000 as not being technically correct, and the jury's subsequent and corrected special verdict form accepted on October 16, 2000 and recorded is the sole verdict in this matter.
SO ORDERED.
BY THE COURT
 ___________________, J. FRANK M. D'ADDABBO, JR.