**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

MICHAEL MCCALISTER,

       Defendant-Appellant.

No. 13-5061
(D.C. Nos. 4:12-CV-00324-TCK-FHM &
4:99-CR-00020-TCK-1)
(N.D. Okla.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY AND
AUTHORIZATION UNDER 28 U.S.C. § 2255(h)**[*]

Before **BRISCOE**, Chief Judge, **O'BRIEN** and **MATHESON**, Circuit Judges.

Michael McCalister, a federal prisoner proceeding pro se, seeks to appeal the

district court's dismissal of his 28 U.S.C. § 2255 motion as an unauthorized second

or successive § 2255 motion. In the alternative, he seeks this court's authorization to

proceed with second or successive § 2255 claims. *See* 28 U.S.C. § 2255(h). We

deny a certificate of appealability (COA) and deny authorization.

---

[*]    This order is not binding precedent except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

McCalister was convicted in 1999 of conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. § 846. He since has filed several challenges to his conviction, including a § 2255 motion and other motions. *See United States v. McCalister*, 453 F. App'x 776, 777 (10th Cir. 2011). In that matter, in which McCalister appealed from the district court's denial of a Fed. R. Civ. P. 60(b) motion, we held that the Rule 60(b) motion was subject to the authorization requirements of § 2255(h). *See McCalister*, 453 F. App'x at 779. We also explicitly informed McCalister of the requirements for authorization for second or successive § 2255 motions. *See id.*

In June 2012, McCalister filed in the district court a new § 2255 motion setting forth three claims: (1) the June 2011 convictions of former Tulsa police officers Harold Wells and John K. Gray[1] meant that crucial evidence at his trial was tainted and should be excluded; (2) newly discovered evidence showed that a search warrant for 2003 West Xyler in Tulsa was fabricated, so that evidence from that search should have been excluded; and (3) the 2009 dismissal of conspiracy and continuing criminal enterprise charges against co-defendants John Torrence and Orlando Mackey "created a variance which renders the Conspiracy . . . Non-existant [sic],"

---

[1] Although McCalister states that Gray and Wells both were convicted in 2011, it appears that Gray pleaded guilty in 2010. *See In re Eskridge*, No. 11-5082, at 4 (10th Cir. July 7, 2011) (unpublished order) (taking judicial notice of Gray's guilty plea).

making him "actually Innocent of the Conspiracy conviction." R. at 98 (emphasis omitted). The district court dismissed the motion as an unauthorized second or successive § 2255 motion. It also held that a transfer to this court was not in the interest of justice under 28 U.S.C. § 1631 because "it was clear at the time of filing that [the district] Court lacked jurisdiction," given that in the 2011 decision "the Tenth Circuit clearly explained that [McCalister] must obtain an order from the Tenth Circuit Court of Appeals authorizing the district court to consider any second or successive § 2255 motions." R. at 191.

McCalister filed a Fed. R. Civ. P. 59(e) motion to alter or amend the judgment arguing that the § 2255 motion should not be considered second or successive because the facts underlying the claims did not exist until long after he had filed his first § 2255 motion. The district court denied the Rule 59(e) motion, holding that the "claim alleging wrongful conduct by officers was 'in existence' at the time he filed his prior § 2255 motions; [McCalister] was just unaware of the claim until he discovered the possible corruption of such officers by virtue of their criminal convictions." R. at 200.

### *Certificate of Appealability*

To appeal, McCalister must secure a COA. *See United States v. Harper*, 545 F.3d 1230, 1233 (10th Cir. 2008). To do so, he must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Relying on *Panetti v. Quarterman*, 551 U.S. 930 (2007), McCalister argues that his new § 2255 motion was not successive because the factual basis for his claims did not exist when he filed his first § 2255 motion. "In *Panetti*, the Supreme Court concluded that a claim that was not ripe at the time the state prisoner filed his first federal habeas petition would not be considered 'second or successive' under [28 U.S.C.] § 2244(b) if the petitioner asserted the claim in a later habeas petition once it became ripe." *In re Weathersby*, 717 F.3d 1108, 1110 (10th Cir. 2013).

As the district court recognized, however, the claim of police corruption actually existed at the time of McCalister's trial. At most, the convictions of Wells and Gray provide further evidence to support an argument that McCalister could have made as early as his trial. Accordingly, the first claim was not newly ripe, and the restrictions of § 2255(h) properly apply. *See id.* at 1111 ("[I]f the purported defect existed, or the claim was ripe, at the time of the prior petition, the later petition is likely to be held successive even if the legal basis for the attack was not." (internal quotation marks omitted)); *see also Leal Garcia v. Quarterman*, 573 F.3d 214, 220-21 (5th Cir. 2009) (rejecting petitioner's broad argument that any claim that was "unavailable to him at the time of his first habeas petition" was not a successive claim, because the argument "would permit petitioners filing later habeas petitions to assert that, because the evidence was not previously discovered or discoverable, the

claim was unavailable; therefore the later petition is non-successive"). No reasonable jurist could debate the correctness of the district court's dismissal of the first claim.

It is unclear whether McCalister asserts on appeal that the second claim also arises out of the corruption convictions. *Compare* Aplt. Br. at 3(d), 3(e)-3(g) (discussing claims one and three, but not claim two); *id.* at 3(i) (appearing to concede that the second claim was ripe before the corruption convictions), *with id.* at 3(j)-3(k) (appearing to assert that claims one and two could only have been discovered as of June 2011). A review of McCalister's § 2255 motion, however, indicates that the second claim is based on evidence other than the convictions. Accordingly, McCalister's *Panetti* theory does not apply to the second claim, and no reasonable jurist could debate the correctness of the district court's dismissal of this claim as second or successive.

As for the third claim, even accepting that the basis for the claim did not arise until after McCalister filed his first § 2255 motion, the district court would still be correct in its procedural ruling. Since 2009, when the dismissal claim allegedly ripened, McCalister has filed in the district court at least one other motion that was subject to the provisions of § 2255(h). *See McCalister*, 453 F. App'x at 777, 779. The new § 2255 motion was filed after that motion, and therefore the new motion is properly considered to be successive.

Moreover, even if the district court had erred in its procedural ruling, McCalister still must show that reasonable jurists "would find it debatable whether

the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484.  This he cannot do.  The dismissal of charges against Torrence and Mackey does not mean that there was no conspiracy.  *See United States v. Coppola*, 526 F.2d 764, 776 (10th Cir. 1975).  And as a matter of law, the dismissal of charges against a coconspirator does nothing to undermine McCalister's conviction for conspiracy.  *See id.*; *see also United States v. Rozin*, 664 F.3d 1052, 1066 (6th Cir. 2012); *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998); *United States v. Dakins*, 872 F.2d 1061, 1065 (D.C. Cir. 1989); *United States v. Sasser*, 974 F.2d 1544, 1560 (10th Cir. 1992); *United States v. Kreimes*, 649 F.2d 1185, 1193 (5th Cir. 1981).  Further, to the extent that McCalister is claiming that the dismissals created a variance, this court has held that a defendant cannot rely on subsequently adduced evidence to prove a variance:  "The question of fatal variance must be judged on the record as it stood at the end of the evidence in the defendants' own trial." *United States v. Howard*, 751 F.2d 336, 338 (10th Cir. 1984).

McCalister also contends that the district court should have transferred the motion to this court rather than dismissing it.  But although the district court *may* transfer a second or successive § 2255 motion to this court, it is not *required* to do so.  *See In re Cline*, 531 F.3d 1249, 1252 (10th Cir. 2008) (per curiam).  The district court evaluated appropriate factors in considering whether a transfer would be in the interest of justice.  *See id.* at 1251-52.  No reasonable jurist could conclude that the district court was required to transfer the § 2255 motion rather than to dismiss it.

For these reasons, McCalister's application for a COA is denied.

### *Request for Authorization*

McCalister alternatively requests authorization under § 2255(h) to file his three claims. The applicable standard is set forth in § 2255(h)(1), requiring a prima facie showing of "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found [him] guilty of the offense."

This court already has examined whether the first and second claims merit authorization in deciding a motion for authorization brought by one of McCalister's codefendants, Robert Eskridge. *See In re Eskridge*, No. 11-5082 (10th Cir. July 7, 2011) (unpublished order). With regard to the first claim, the majority[2] concluded that the evidence of the corruption convictions did not establish that no reasonable factfinder would have found Eskridge guilty. *See id.* at 9, 12. "This court has little or no basis to conclude that Gray's and Wells' testimony was so material that, if impeached, Eskridge would not have been found guilty." *Id.* at 10. With regard to the second claim, the majority concluded that the challenge against the search warrant was not supported by any newly discovered evidence. *See id.* at 14.

McCalister asserts, without elaboration, that evidence procured by Wells and Gray was crucial at trial. But, as with Eskridge, McCalister has provided "little or no

---

[2]    Chief Judge Briscoe dissented and would have granted authorization. *See Eskridge*, No. 11-5082, at 15.

- 7 -

basis" to conclude that any evidence connected to or testimony by Gray and Wells "was so material that, if impeached" with the evidence of the convictions, no reasonable factfinder would have found McCalister guilty. *Id.* at 10. He has not provided any transcripts to assess the materiality of Gray's and Wells' testimony. And the information before us shows that during the trial, two government witnesses other than Gray and Wells "testified directly as to . . . drug activity on the part of McCalister." *United States v. Busby*, 16 F. App'x 817, 825 (10th Cir. 2001). On direct appeal, this court was "in accord" with the government's position that the evidence showed that there was "a 'large scale' drug conspiracy extending from 1991 to 1999 in the Tulsa, Oklahoma area," and "that McCalister became a part of that conspiracy in 1994 and continued to be a member thereof until 1999." *Id.* In short, McCalister has not made a prima facie showing that the new evidence of Wells' and Gray's subsequent convictions, viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of a drug conspiracy, as § 2255(h)(1) requires.

McCalister's second claim alleges that he has new evidence undermining a search warrant of 2003 West Xyler in Tulsa. He supports the claim with an August 2011 disclaimer from an Osage County Deputy Court Clerk stating that she cannot locate a copy of any search warrant for that address. We deny authorization on the same grounds that this court previously denied Eskridge authorization to pursue this

claim: the search warrant's validity was challenged at trial, and the August 2011 disclaimer is not newly discovered evidence. *See Eskridge*, No. 11-5082, at 14.[3]

As for the third claim, as stated above, the fact that the government did not pursue charges against Torrence and Mackey does not mean that McCalister was actually innocent of a drug conspiracy. The dismissal of the charges against the codefendants fails to show that no reasonable juror would have found McCalister guilty. Therefore, the third claim also fails to satisfy § 2255(h)(1).

McCalister's request for a COA and his alternative request for authorization to file a successive § 2255 motion are denied.

Entered for the Court

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

---

[3] In addition, there is no showing of McCalister's relationship to 2003 West Xyler to establish that he would have standing to challenge the search. *See United States v. Johnson*, 584 F.3d 995, 998 (10th Cir. 2009) ("The burden of proof is on the defendant to demonstrate that he has a reasonable expectation of privacy in the place searched to establish his standing.").